Phillips *vs.* The Ocmulgee Mills.

---

WILLIAM R. PHILLIPS, plaintiff in error, *vs.* THE OCMUL-GEE MILLS, defendant in error.

(BLECKLEY, Judge, having been of counsel, did not preside in this case.) .

1. A note dated November 9, 1864, to pay, three years after date, one hundred and twenty-five thousand pounds of cotton, to be delivered in any cotton market in Georgia outside of the enemy's lines, the consideration whereof is a like number of pounds of cotton advanced at the date thereof, is not a Confederate contract within the scaling ordinance of 1865.

2. Even if such a note were within the ordinance, equity would not scale it, because its consideration is a certain quantity of cotton, and it is payable in the same quantity of the same article, without interest, three years thereaf-ter, and the measure of damage, if the cotton is not then returned, is the value of the cotton at any market in Georgia when the breach occurs, which is long after the war.

3. Nor is such a note illegal because the maker did not have the cotton in hand at the date thereof, but had to arrange for its payment by purchase or otherwise when it matured.

4. A note given for cotton, not at the time of the bargain, but subsequently thereto and antedated by the maker, who is the buyer, and signed by him, takes the parol bargain and sale out of the statute of frauds.

5. The exercise of ownership over the cotton bargained, by using a portion thereof for the purpose for which it was bought, and by selling one half of the quantity purchased to a third person, or either of these acts of owner-ship, is such constructive acceptance as, independently of any note or mem-orandum, would take the parol bargain out of the statute of frauds.

6. The question of delivery or non-delivery of the thing sold is a question of what was the intention of the parties; and where, out of five or six hun-

dred bales of cotton stored in a warehouse, one hundred and twenty-five thousand pounds are bargained and sold for the purpose of being used in a factory near thereto, and the buyer, after the bargain and sale to him, sold one-half to his partner in the factory, and a portion of that first bought is consumed in the factory by the partnership, and the first buyer has re- ceived from his partner full payment for his half in another lot of cotton of the same quantity at another place, such use and acts and circumstances show the intention of the parties to treat the entire one hundred and twen- ty-five thousand pounds as delivered for consumption in the factory, to be weighed as needed from time to time, and altogether amount to a sufficient delivery thereof, though the whole quantity sold was not weighed and sev- ered from the bulk.

7. Newly discovered testimony, consisting of facts within the knowledge of witnesses called by the movant and examined on the trial, will not author- ize a new trial.

8. Though the court may err in isolated portions of its charge, yet if, when taken as a whole, the charge gives the law of the case in substance to the jury, and the verdict is right upon the law and facts, and a new trial be refused, this court will not interfere.

Scaling ordinance. Equity. Promissory notes. Contracts. Statute of frauds. Sales. Delivery. New trial. Before Judge HALL. Fulton Superior Court. October Adjourned Term, 1874.

Reported in the opinion.

P. L. MYNATT; A. W. HAMMOND & SON; PEEPLES & HOWELL, for plaintiff in error.

E. W. BECK; A. M. SPEER; B. H. HILL & SON, for de- fendant.

JACKSON, Judge.

The Ocmulgee Mills, a corporation in Georgia, bargained and sold to Phillips, one hundred and twenty-five thousand pounds of cotton out of a bulk of five or six hundred bales stored in a warehouse near the factory of that name. The cotton sold was not all weighed and separated from the bulk, but some of it was used by the factory, which factory had been leased to Phillips and White, his partner, and was then run by them. After the cotton was bargained and sold by

parol to Phillips, Phillips sold one-half to his partner, White, for a like quantity of cotton, (sixty-two thousand five hundred pounds,) in another place, and received from him that cotton.    In a short time after the sale the cotton and factory were burnt by the Federal army.    Afterwards, Phillips gave his note to the Ocmulgee Mills for the cotton, pursuant to the parol bargain, promising to pay the company three years after date, at any market in Georgia out of the enemy's lines, one hundred and twenty-five thousand pounds of cotton.    Suit was brought by the Ocmulgee Mills on this note, and a verdict rendered for the plaintiff for the lowest proven value of the cotton in the markets of Georgia at the time of the breach. A motion was made for a new trial; it was overruled, and error is assigned on the judgment of the court overruling that motion on all the grounds alleged in it.    We shall consider such of these grounds as are important and necessary to control the case.

1, 2.  The promissory note is for the same number of pounds of cotton as is the consideration of it.  It is payable in cotton; it was given for cotton; it fell due long after the war was ended, and not being paid then in cotton when the contract was broken, the damages were the value of cotton then.  The mere fact that it was made in 1864 does not make it a Confederate contract, so as to be within the ordinance of 1865.  It was, in effect, cotton loaned to be returned in the same weight of cotton three years thereafter.  It had as well be said that so much gold advanced, to be returned in the same quantity of gold at the end of three years, would be a Confederate contract, subject to be scaled.  Even if within the letter of the ordinance, within which we do not think it falls, it is certainly in no possible view within its sense or spirit or intention.  On the contrary, it is eminently right and just that a thing of value loaned without interest, to be returned in kind at the end of three years, should be returned in kind; and if not so returned, it is equally just and equitable that its value at the time of the breach of the contract should be then paid.  The value measured by the jury in this case was the lowest price

of cotton proven at many of the Georgia markets, and as the buyer or borrower agreed to pay in kind at any of those markets, we think the proof proper and the measure right.

3. Nor do we think such a note or bargain illegal because the defendant did not then, at the time of the bargain, have the cotton on hand, ready to be delivered at the end of three years. Such a principle would make illegal every loan of corn by one neighbor to another, to be returned at the end of the season when the new crop came in. It was in no sense a speculation on the future price of cotton, nor does it at all approach the idea of gambling. It was simply an advance of cotton, to be returned in cotton at a future time, and perfectly legal so far as we can see.

4. But the trade, at the time it was made, was in parol, and it is urged that it is within the statute of frauds, and therefore void. After the trade was made and the cotton was burned, and before this suit was brought, the defendant gave his note for the cotton, and dated it back to the time of the trade. We think such act on his part takes the case without the operation of the statute. If the contract be reduced to writing, signed by the party to be charged, any time before suit brought, it is enough; especially if dated by him at the time of the contract. It relates back and becomes part of the contract, and it does not matter that it was written and signed after the thing sold was destroyed, if there was no fraud in procuring the note, and if the party charging himself knew the destruction of what he bought. He should be commended for doing what, in honor and justice, he ought to have done, to-wit: to put in writing the truth about the trade he had fairly made, though without fault on the part of the seller, it had been of no profit at all to him. Such conduct approaches the rectitude of the man commended in scripture, who "sweareth to his own· hurt," and is all the more admirable in these times when such virtue is so rarely exhibited. The giving the note, then, if it be not strictly in legal parlance a ratification of the parol contract, operates so to bind

the defendant as to take the note out of the statute of frauds: Benjamin on Sales, 152, and cases cited.

5. But if this note had not been given, the acts of ownership over the cotton sold, exercised by him after the purchase, would themselves amount to an acceptance of the cotton by the buyer and would take the case out of the operation of the statute. He sold half of it and got exactly the same quantity from the person to whom he sold, delivered to him at another place; or in other words, he exchanged sixty-two thousand and five hundred pounds of that bought at the Ocmulgee mills' warehouse for sixty-two thousand and five hundred pounds near another factory which he had in operation in Newton county. He also used in the factory leased by himself and partner a portion of the cotton bought. The law is well settled that such acts of ownership amount to constructive acceptance, and bind the buyer, taking the case out of the statute of frauds: Benjamin on Sales, 108–9, et seq. The principle stated by an eminent judge, and quoted by Benjamin, is, "if the vendee does any act to the goods, of wrong if he is not owner of the goods, and of right if he is owner of the goods, the doing of that act is evidence that he has accepted them." It is not to be imagined without great want of charity, especially when dealing with one who put his contract in writing, after the destruction of the property he had bought, and gave his note for a thing then burnt up, that he would either spin in his factory or sell to another that which he had not accepted and which did not belong to him.

6. In regard to the delivery of the cotton advanced, we find from our best view of the authorities examined, that in a case of this sort, the question turns on the intention of the parties to be gathered from all the facts of the case: Benjamin on Sales, 221, 228, and cases cited, 238. We think the facts here, show that the parties intended the cotton to be considered as delivered, and it was so regarded. So much of the cotton was bought; it was bought in a warehouse adjacent to the factory the buyer was running; it was bought to be worked up in that factory; it was to be stored in the ware-

house where it was; it was to remain there at the risk of the buyer; the buyer used it as owner; he exchanged half to his partner in the lease of the factory for an equal quantity that partner had elsewhere; some of it was consumed in the factory; these facts, we think, show the intention of the parties to treat the number of pounds as delivered, though they were not separated from the bulk out of which these pounds were to be used. It seems to us that the parties intended it to be treated as delivered, and to be weighed as used; and there could be nothing accomplished by separating the part sold, from the bulk, except as it was taken to the factory in small quantities and worked up. And this seems to have been the course pursued. We think these facts distinguish this case, from *Bowers vs. Anderson*, 49 *Georgia Reports*, 143. In that case, the doctrine of constructive acceptance and delivery was not made by the facts, or considered by the court, as is shown in the close of the opinion.

7. In regard to the newly discovered evidence, we think it wholly insufficient to authorize a new trial. It is simply evidence in the breast of witnesses examined and called by the defendant himself, and which he did not draw out. It was his own fault if the examination was not full, and the precedent would be dangerous and work interminable delays, if allowed to grow into a principle or rule of action governing new trials.

8. On the whole, we think that the law, in the main, was properly given by the court, though there may be some isolated errors in portions of the charge; and as the verdict is right, we believe, and rests on law and fact abundant to sustain it, we will not disturb it.

Judgment affirmed.