### ADERHOLD et al. v. BISHOP.

No. 11939—Opinion Filed Dec. 18, 1923.

Rehearing Denied.

**1. Physicians and Surgeons—Liability for Negligence of Head Nurse in Operation.**

Where a patient engages the services of a firm of surgeons to perform a surgical operation for the removal of a goiter, and goes to an incorporated hospital, owned and operated exclusively by the operating surgeons, for the operation, and where during the operaton the services of a head nurse of the hospital and a general employe of the hospital are used by the operating surgeon in the performance of the operation, such operating surgeons are liable to the patient for any negligent act of such head nurse in respect of the service performed by her and made use of by the operating surgeons in the performance of the operation.

**2. Same—Relation of Master and Servant.**

Under such circumstances the relation of master and servant exists between the operating surgeons and the head nurse, during such time as is required for the performance of the operation, although such head nurse may not be in the regular employ of the operating surgeons.

**3. Master and Servant—Existence of Relation—Temporary Loan of Servant.**

A third person to whom servants of a general master have been temporarily loaned, with their consent, is for the time being their master, he having for the time being control of the servant.

**4. Physicians and Surgeons—Liability for Negligence of Nurse in Operation—Instructions.**

Record examined, and held, that the instructions given by the court to the jury fairly stated the law applicable to the case.

**5. Trial—Misconduct of Court and Counsel.**

Record examined, and held, that no misconduct on the part of plaintiff's attorney, or abuse of discretion on the part of the trial court sufficient to justify a reversal, is shown.

**6. Appeal and Error—Excessive Verdict—Remittitur.**

Record examined, and held, that the verdict for $12,620 is excessive upon the facts proven, and that the judgment should be reversed, and a new trial granted, unless a remittitur is filed for all in excess of $7,500 and interest thereon from date of judgment.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Canadian County; James I. Phelps, Judge.

Action by Bertha E. Bishop against T. H. Aderhold and J. A. Hatchett to recover damages for personal injuries. Judgment for plaintiff, and defendants bring error. Modified and affirmed.

M. D. Libby and Ames, Lowe & Richardson, for plaintiffs in error.

H. W. Morgan and Babcock & Trevathan, for defendant in error.

Opinion by FOSTER, C. On the 10th day of May, 1918, the defendant in error, Bertha E. Bishop, as plaintiff below, commenced an action in the district court of Canadian county against the plaintiffs in error, T. M. Aderhold and J. A. Hatchett, doing business as the El Reno Sanitarium and Training School for Nurses, defendants below, to recover the sum of $25,240 as damages resulting from the alleged negligent performance of a surgical operation for the removal of a goiter. The parties will be hereinafter referred to as they appeared in the court below.

The plaintiff's action arose out of the following circumstances:

The plaintiff while undergoing a surgical operation in the El Reno Sanitarium and Training School for Nurses, on the 23rd day of July, 1917, for the removal of a goiter or enlargement of the thyroid glands, suffered a burn upon her lower limbs.

The defendants, Dr. J. A. Hatchett and Dr. T. M. Aderhold of El Reno, Okla., were then partners in the practice of medicine and surgery and performed the surgical operation. Dr. Aderhold was the operating surgeon and Dr. Hatchett his assistant.

The burn upon the lower limbs of the plaintiff was not discovered, except through the complaint of the plaintiff herself, after she had been removed from the operating table to her room in the sanitarium, and had so far recovered from the effect of the anaesthetic as to be able to complain of the pain in her lower limbs.

The El Reno Sanitarium is and has been for many years a corporation, organized and existing under the laws of the state of Oklahoma, its true corporate name being "El Reno Sanitarium and Training School for Nurses." The incorporators were J. A. Hatchett, Mary H. Hatchett, F. H. Clark, and Elizabeth Clark, and its principal purposes as expressed in its article of incorporation are: First, "to provide and maintain a hospital for the suitable accommodation, nursing, medical and surgical treatment of such persons as may be in need of the same irrespective of sex, color, race, or religious belief;" second, "to establish, maintain and conduct a school for the proper training of women as nurses." By the articles of incorporation it was provided that the corporation should issue no shares of stock.

At the time of said operation the said incorporators Dr. F. H. Clark and Elizabeth P. Clark had ceased to be members of the corporation, the said T. M. Aderhold having succeeded them therein. Dr. Hatchett had been president of the corporation from the beginning, and was such president at the time of the operation. Dr. Aderhold was its secretary.

Aside from being a training school for nurses, the El Reno Sanitarium was a general hospital. It provided all modern instruments of surgery, operating room, skilled nurses, requisite to the treatment of patients for disease, and for surgical operations, except that it had no medical staff, and provided neither physicians or surgeons.

The plaintiff alleged in her petition that the defendants were each practicing physicians and surgeons, doing business as "the El Reno Sanitarium, at El Reno, in Canadian county, Oklahoma," and contracted with her to perform an operation upon her for the removal of a goiter; and that while engaged in performing the operation, they so negligently and unskillfully performed said operation that plaintiff's feet and ankles were scalded and burned, to her damage in the sum of $25,240.

The defendants answered by a general denial, and alleged, further, that plaintiff's alleged injury was in no manner due to their negligence or to the negligence of their servants or assistants.

The cause was tried on the 19th and 20th of May, 1920, resulting in a verdict by the jury for the plaintiff in the sum of $12,620.

Motion for a new trial was filed and overruled, and the defendants bring the cause regularly on appeal to this court and complain: (1) That the trial court erred in overruling their demurrer to the evidence interposed at the close of plaintiff's case and in overruling their motion for a directed verdict at the close of all the evidence; (2) that in giving certain instructions to the jury and in refusing to give certain instructions requested by the defendants; (3) that in refusing to grant a new trial because of the misconduct of plaintiff's attorney and an abuse of discretion on the part of the trial court by which the defendants were prevented from having a fair trial; (4) that in admitting certain evidence for plaintiff over the objections of the defendants and in refusing to admit certain evidence offered by the defendants; (5) that because the damages allowed by the jury were excessive and given under the influence of prejudice and passion.

There is no substantial conflict in the evidence.

Plaintiff was a school teacher and resided at Anadarko in Caddo county, Okla. She was suffering from a goiter, or an enlargement of the thyroid gland. Dr. W. W. Kerley, residing at Anadarko, was and had for sometime been her physician. The defendants, Dr. Hatchett and Dr. Aderhold, were partners engaged in the general practice of medicine and surgery at El Reno, Okla. As individuals, but not as a partnership, they were officers and directors of the El Reno Sanitarium, and practically owned said corporation. As a partnership they had no management or control of the corporation, but solely by virtue of being officers in said corporation, they employed and

discharged the nurses and other hospital attendants. In their partnership business as physicians and surgeons, they in no way served said corporation and the corporation in no way served them.

The plaintiff's regular physician, Dr. Kerley, had long been acquainted with the El Reno Sanitarium and Training School for Nurses, and with the defendants, Dr. Hatchett and Dr. Aderhold. Dr. Kerley recommended that the plaintiff go to the El Reno Sanitarium and that she employ the defendants to perform the operation. Representing the plaintiff, Dr. Kerley arranged, in a conversation over the telephone, with Dr. Hatchett and Dr. Aderhold to perform the operation. Plaintiff had no conversation or consultation with the defendants, or either of them, concerning the arrangement made by Dr. Kerley prior to the operation.

As recommended by Dr. Kerley, the plaintiff went to the El Reno Sanitarium; was given a room in the hospital, and she paid a hospital fee of $45 in advance.

There is no evidence that plaintiff made any contract with the defendants concerning the El Reno Sanitarium, or for any service which the El Reno Sanitarium should perform in connection with her operation, the contract being a simple engagement by the defendants to perform on plaintiff an operation for the removal of a goiter.

When the time arrived for the performance of the operation, Dr. Hatchett and Dr. Aderhold were sent for. They entered plaintiff's room and made such preliminary examinations as were necessary prior to the operation. The plaintiff was placed upon the operating table, and beside the operating surgeons, other persons present and assisting in the operation, were Dr. Riley, who administered the anaesthetic, Miss Eskridge, who was the superintendent and head nurse of the hospital, and two other nurses of the institution assisting her.

While the plaintiff was on the operating table, Dr. Aderhold stood on one side and Dr. Hatchett on the other facing the plaintiff. Dr. Riley, the anaesthetist, stood at plaintiff's head, and Miss Eskridge, the head nurse, stood near her feet; the two other nurses were in the room for the purpose of aiding the head nurse. A pan or basin of hot water was brought into the room and placed on the operating table between the plaintiff's feet. From the time of the first incision until the incision was closed, the operation required about 40 minutes. As a part of the operation, it was

necessary to take up the blood which oozed from the incision and from small severed blood vessels, too small to be clamped, with gauze cloths immersed in hot water and wrung out in the hands of the head nurse and by her handed to the operating surgeons. From time to time during the operation, the pan or basin, resting on the operating table between plaintiff's ankles, was replenished with hot water by other hospital attendants and gauze cloths immersed in the pan or basin of hot water were wrung out in the hands of the head nurse and handed by her to the operating surgeons and used by them in taking up the blood which oozed from the incision.

After the operation and after the plaintiff had been removed from the operating table and after she had so far recovered from the effects of the anaesthetic as to be conscious of pain, it was discovered that her feet and ankles had been severely burned. It is admitted that the burn is the result either of the water dripping on the plaintiff's ankles and feet, or from the pan itself resting against her feet. It is not denied that the burn so caused was the result of a want of care on the part of the head nurse and other employes of the hospital in the handling of said basin or pan of water.

It is admitted that the operation was successfully performed and that the plaintiff was relieved from a dangerous and perhaps fatal malady and that the defendants were guilty of no personal negligence in the performance of said operation, but that the injury was caused solely by reason of the negligent and careless conduct on the part of the head nurse and other employes of the hospital, assisting in the operation.

It is the claim of the plaintiff, however, that under her contract with the defendants, as partners, it was their duty as such to supply every agency necessary in the successful performance of the operation and that, if hot sponges, wrung out in the hands of the head nurse from a pan or basin of hot water and handed to the operating surgeons, were made use of by the defendants in the performance of the operation, then the service of the said head nurse was a part of the operation and for any negligent act or omission on her part, the operating surgeons are liable, although she may not at the time have been a regular employe of the operating surgeons.

On the other hand, it is the contention of the defendants that their contract with the plaintiff was no more than a simple engage-

ment to perform a surgical operation and that in the absence of personal negligence in the performance of the operation, they are not liable for the negligent acts and omissions of general employes of the hospital, where the operation is performed, supplied under independent contract and made use of by them in the performance of the operation.

At the outset, this court desires to express its appreciation of the very thorough and exhaustive manner in which counsel on both sides have argued and presented their respective contentions, and to acknowledge the very great assistance which the court has derived from the briefs which counsel have filed.

We are not unmindful, as pointed out in the brief of the defendants, of the great danger and hardship that may result to the medical profession involved in submitting malpractice cases to the jury where no negligence or want of skill on the part of the surgeons has been clearly shown, and we fully concur in the language of Mr. Justice Dunn in the case of Kernodle v. Elder, 23 Okla. 743, 102 Pac. 138. But in the case at bar, while the operating surgeons are exonerated from acts of personal negligence in the performance of the operation, negligence on the part of the general employe of the hospital where the operation was performed in respect of the service performed by such employe and made use of by the operating surgeons is not disputed. It is apparent, therefore, that the question for our determination turns not upon the presence or absence of personal negligence of the operating surgeons in the performance of the operation, but upon whether or not the admitted negligence of the general employe of the hospital is imputable to the operating surgeons. We believe this question should be answered in the affirmative.

The El Reno Sanitarium provided no medical staff of its own for patients going there for nursing and treatment. All surgical and medical treatment necessarily was supplied from the outside. It is but fair to assume that this institution had no facilities for directing and using the services of its employes, except as the services of its employes were made use of by outside physicians and surgeons, and therefore it must be assumed that it was a customary and usual thing for the institution to furnish its employes to outside surgeons who might be called there to perform an operation.

In the instant case the plaintiff went to the El Reno Sanitarium for an operation. The operating surgeons, the defendants in this case, went there to perform the opera-

tion. In the performance of the operation, the hospital permitted and the surgeons consented to use its general employe to assist the surgeons in the performance of the operation. While the head nurse and her assistants were the general employes of the El Reno Sanitarium, they were, nevertheless, during the time required for the actual operation, under the direction and supervision of the operating surgeons and were the servants of the operating surgeons in respect to such services as were rendered by them in the performance of the operation, and for any negligence on the part of such employes in the performance of such services, the operating surgeons are liable.

An examination of the authorities discloses to our satisfaction that the true test of the existence of the relation of master and servant in a given case does not depend upon whether the servant was in the general employ of the master, but upon whether the master actually exercises supervision and control over the servant during the time he uses such servant. A general master may loan the service of his employe to another for a specified purpose and for a short period of time, in which case the individual to whom such general servants are let is the master and responsible for their negligent acts so long as he exercises actual supervision over them.

In Wolfe v. Mosler Safe Co., 124 N. Y. Supp. 541, it is said:

"A third person to whom servants of a general master have been temporarily loaned, with their consent, is for the time being their master he having for the time being control of the servant."

Chicago, R. I. & P. R. Co. v. Stepp, 22 L. R. A. (N. S.) 350; Konitsky v. Matthews, 118 N. Y. Supp. 366; Wyckoff v. Wunder (Minn.) 119 N. W. 655; Messmer v. Bell & Co. (Ky.) 117 S. W. 346.

In Western Union Telegraph Co. et al. v. Rust, 55 Tex. Civ. App. 359, it is said:

"Where a servant has two masters, one general and one special, the latter, if having the power of direction or control, is the one responsible for the servant's negligence."

In Brady v. Chicago & G. W. R. Co., 114 Fed. 100, it is said:

"The power of control is the test of liability under the maxim respondeat superior. If the master cannot command the alleged servant, then the acts of the latter are not his, and he is not responsible for them. If the principal cannot control and direct the alleged agent, then it is not his agent."

"The liability of masters for the acts or omission of their servants, weighs heavily

on them; but the hardship would be at least equal if the master were not liable; and it would be attended with injustice too. If the master be morally innocent, so must the injured party be also—and, if two innocent persons, surely he should suffer through whom it is by the employment of another, the mischief has been occasioned." Dansey v. Richardson, 3 El. & Bl. 144-161.

If the head nurse was the servant of the operating surgeons, it follows without argument that her negligence is imputable to them under the general doctrine of respondeat superior.

In Baker v. Chicago, P. & St. L. R. Co., 243 Ill. 482, it is said:

"The maxim of respondeat superior is bottomed on the principle that he who expects to derive advantage from an act which is done by another for him must answer for any injury which a third person may sustain from it."

In Farwell v. Boston & W. R. Corp., 38 Am. Dec. 339, it is said:

"This rule is obviously founded on the great principle of sacred duty, that every man, in the management of his own affairs, whether by himself or by his agents or servants, shall so conduct them as not to injure another; and if he does not, and another thereby sustains damage, he shall answer for it."

We can conceive of no instance in which the application of the doctrine of respondeat superior could exercise a more salutary influence than in cases of damage arising out of surgical operations. The patient is helpless under the influence of an anaesthetic and absolutely at the mercy of the surgeons performing the operation, and they are charged with the duty to see that no preventable injury results to their patient. Under the modern science of surgery a surgical operation, with modern hospital appointments, is a complex enterprise. Necessarily the various agencies that enter into it must be performed by different individuals, under the active supervision and direction of the operating surgeons in charge. If the operating surgeons were not made liable for the negligent performance of the duties of those working under them, the law in a large measure would fail in affording a means of redress for preventable injuries sustained from surgical operations.

We have given careful consideration to the numerous cases cited by counsel for defendants, an dfrom such examination we are satisfied that these cases are clearly distinguishable from the case at bar. Some of them deny liability of the operating surgeons for negligence of hospital attendants in connection with after treatment, administered after the operation and during the absence of the operating surgeon, and unknown to the surgeon and not discoverable by him in the exercise of due care and skill, as in the case of Harris v. Fall, 177 Fed. 79. Other cases cited deny liability where two or more physicians, each with the consent of the other, independently engage to perform different services incidental to one operation, where the negligence of one of the physicians was not discoverable by the other, as in the case of Myers v. Holburn (N. J.) 33 Alt., 389.

The contention of counsel for defendants that the allegations of plaintiff's petition charged the defendants with personal acts of negligence only, and was insufficient to admit evidence of negligence on the part of their servants, under the doctrine of respondeat superior, is, we think, untenable. The petition charged the defendants with general negligence in performance of a surgical operation and whether the negligence as disclosed by the evidence was personal or imputed would be immaterial so long as the petition could be sustained against a general demurrer.

We therefore conclude that the trial court committed no error in overruling the motion of the defendants for a directed verdict at the close of all of the evidence.

Defendants next complain of the instructions of the court, particularly instructions Nos. 8, 9, 10, and 11.

Upon instruction No. 8, it is sufficient to say that if the operating surgeons employed the services of the head nurse in the performance of the operation, which is not denied, then the operating surgeons would be liable for her negligent conduct in respect of the part performed by her, irrespective of whether such services are those ordinarily given to a patient under like circumstances, and in view of the fact that it is admitted by the defendants that the services of the head nurse were made use of by them in the performance of the operation, we think the action of the trial court in leaving for determination by the jury the question of whether the duties performed by the head nurse were those usually and ordinarily performed in operations of this kind, was more favorable to the defendants than to the plaintiffs and of such instruction they cannot be heard to complain. Ward v. Richards, 28 Okla. 629, 115 Pac. 791; Kuhl v. Supreme Lodge Select Knights and Ladies, 18 Okla. 383, 89 Pac. 1126; Shawnee National Bank v. Wootten & Potts, 24 Okla. 425, 103 Pac. 714.

We do not think the instruction susceptible of any construction that under a contract by surgeons to perform a surgical operation that they make themselves liable as a matter of law for after-treatment and general attention, administered by hospital attendants of the hospital to which the patient may go.

The instruction fairly interpreted imposes responsibility upon the operating surgeons for the acts and omissions of servants employed by them in the performance of the operation, regardless of whether they are the general employes of the operating surgeons or not.

Instruction No. 9 left for determination by the jury the question of whether the part played by the head nurse was a necessary part of the operation, and what we have said with reference to instruction No. 8 is applicable to this instruction and the defendants were in no wise prejudiced thereby. The fact that it is admitted that defendants employed the services of an attendant to handle a vessel, containing hot water into which sponges for the stopping of blood were dipped, is equivalent to an admission that the presence of such attendant was necessary.

Passing to instructions Nos. 10 and 11, it is sufficient to say that we have already found in this opinion that an allegation of general negligence in the petition is sufficient to admit evidence of negligence and want of care on the part of the servants and agents of the defendants, and the instruction, therefore, is not objectionable because the court told the jury that plaintiff's contention of negligence on the part of the servants of the defendants arose under the allegations of her petition. No objection to any evidence of negligence on the part of the head nurse was made at the trial on the ground that the allegations of the petition were insufficient to admit such evidence, and a careful examination of the entire record discloses to our satisfaction that the case was submitted to the jury and tried not upon the theory that the employes of the hospital were not negligent, but that their negligence was not imputable to the defendants. It follows that the instruction is likewise unobjectionable because the court told the jury, in defining issues, that "it is also not disputed that while undergoing that operation, her feet and limbs were burned."

The petition charged general negligence on the part of the defendants. The answer of the defendants was a general denial that the injuries alleged to have been sustained by the plaintiff were in any manner due to the negligence of these defendants, or to the negligence of their servants or assistants. Under the allegations of defendants' answer, as well as upon a review of the entire record, the defendants tendered the issue of negligence on the part of their servants, thereby foreclosing any question as to the sufficiency of the petition to admit evidence of negligence on the part of defendants' servants.

Upon a careful reading of the instructions as given by the court, we are of the opinion that they fairly stated the law to the jury and it follows therefore that the trial court committed no error in refusing certain other requested instructions, which were in conflict with the theory of the law embodied in the instructions as given by the court to the jury.

We pass now to the contention of counsel for defendants of abuse of discretion on the part of the trial judge and misconduct on the part of counsel for plaintiff in the trial of the case. The record discloses that counsel for plaintiff on re-cross examination of Dr. Aderhold, one of the defendants, propounded to the witness a certain incompetent question, designed to elicit information as to whether or not the El Reno Sanitarium was indemnified against liability for personal injuries. This question was objected to and sustained by the court before the witness had answered. Counsel for plaintiff then proceeded to propound another incompetent question, designed to elicit the information as to whether the defendants personally were indemnified for personal injuries inflicted by the El Reno Sanitarium. This question was answered in the negative by the witness and afterwards an objection to the incompetency made and sustained by the court.

Counsel for defendants thereupon moved that the court instruct the jury not to consider the testimony, upon which motion and request no action was taken by the court at the time.

In its instructions to the jury, at the close of the evidence, the court told the jury as follows:

"By the Court: The court will instruct the jury, that when the case is finally submitted to you, that you are not to consider anything as evidence, in the case, except where the court has allowed the answers to be made."

So far as the trial court is concerned, it appears that it was extremely careful to see that no prejudicial inference arising from the questions asked, objected to, and sustained, should go to the jury, and we are therefore unable to agree with counsel

that the trial court was guilty of any prejudicial conduct against the defendants.

While the questions propounded by counsel were, no doubt, irrelevant under the issues in the case, nothing prejudicial in fact resulted to the defendants, in view of the objections made and sustained to the first question, and the negative answers to the second question propounded, and we see nothing in the mere fact that counsel for plaintiff asking an incompetent question, calling for a public reprimand, or that the mere asking of such question would amount to misconduct on his part. Hollenbeck v. Mo. Pac. Ry. Co. (Mo.) 38 S. W. 723.

It is possible to determine in the instant case that the jury were not adversely influenced by the question propounded by reason of the fact that the answer of the defendant himself was in the negative; that is, that they were not indemnified against liability for injuries occurring in the El Reno Sanitarium, and in no case that we have been able to find has a reversal resulted where it is possible to determine from the whole record that the jury could not have been prejudicially influenced.

Taking the remarks of counsel for plaintiff in his closing argument to the jury, and construing them as a whole in the light of the evidence disclosed by the record, we are unable to agree with counsel for defendants that anything of a prejudical character was said. The remarks were made in answer to contentions made by the opposing side and when considered in the light of the whole record and in the light of the entire argument, were within the facts and were not improper argument.

It is finally contended that the verdict of the jury is excessive. We believe this contention is well taken.

In the case of Slick Oil Co. v. Coffey, et al., 72 Oklahoma, 177 Pac. 915, this court stated the rule, as follows:

"* * * Authorities may be cited pro and con sustaining a verdict for $30,000 and holding such amount to be excessive, but each of the cases turns upon the particular facts involved, and a comparison with the facts here can serve no useful purpose. Where it clearly appears that the jury has committed some palpable error or acted upon some improper bias, influence, or prejudice, or have clearly mistaken the rules of law by which damages are to be regulated, the verdict may be set aside. St. L. & S. F. Ry. Co. v. Hodge, 53 Okla. 427, 157 Pac. 60. And where a verdict is excessive for any of the reasons stated, the Supreme Court may direct a reversal of the cause or give the plaintiff the option to remit the amount held to be excessive and allow the judgment as modified to stand."

In the case of Chicago, R. I. & P. Ry. Co. v. Fontron Loan & Trust Co., 89 Okla. 87, 214 Pac. 172, the court approved the rule laid down in the Slick Oil Co. v. Coffey Case, supra, and in speaking of the case which the court then had before it, said:

"* * * It can serve no useful purpose to dwell upon these facts or discuss the same in detail."

It being the opinion of the court in the instant case that the verdict of the jury is clearly in excess of any sum that could be based upon the idea of compensation, and that the jury has clearly mistaken the rules of law by which damages are to be regulated, but being equally convinced that a case of liability is clearly shown, it is therefore ordered that, if the plaintiff will file a remittitur for all in excess of the sum of $7,500, and interest thereon from the date of the verdict, within 30 days from the receipt of the mandate herein by the trial court, the judgment as thus modified will be affirmed; otherwise, the judgment will be reversed and remanded and a new trial granted.

By the Court: It is so ordered.