Marie PARRIS, Plaintiff in Error,

v.

Irvan T. McCALLAY, Defendant in Error.

No. 41333.

Supreme Court of Oklahoma.

Feb. 14, 1967.

Charles W. Stubbs, Oklahoma City, for plaintiff in error.

Scarbrough, Grider & Worrell, Altus, for defendant in error.

BLACKBIRD, Justice:

This action grew out of an automobile collision at a street intersection in Altus, on January 30, 1963. The colliding autos were a 1959 model Cadillac sedan, driven by plaintiff in error, hereinafter referred to as defendant, and a 1953 model Studebaker sedan, driven by defendant in error, hereinafter referred to as plaintiff. The intersecting streets are "A" Street, extending east and west, and Lee Avenue, extending north and south. Plaintiff's Studebaker approached the intersection from the south on Lee Avenue; defendant's Cadillac approached it from the west on A Street.

In plaintiff's petition filed in March, 1963, he alleged that the collision was proximately caused by defendant's negli-

gence in several respects, including that of driving her car at an excessive and dangerous rate of speed in violation of a certain Altus city ordinance, which prescribes a speed limit of 20 miles per hour, and of failing to yield the right of way to his car in violation of "47 Okl.St.Ann. § 11–401(b), * * *". Plaintiff further alleged that, as a result of the collision, he was thrown from his automobile to the pavement and rendered unconscious, that five of his ribs and his pelvic bone were broken; that he suffered a deep laceration on his head, disfiguring him for life, together with multiple bruises and scratches over his entire body. The items of his damages set forth under plaintiff's first alleged cause of action total $20,729.10, and are described as: $100.00 for medical attention to his wife, who was a passenger in his Studebaker at the time of the collision, $10,000.00 for his pain and suffering, $500.00 for his disfigurement, $764.94 for his past, present and future medical expenses, $2080.00 for loss of earnings during this six months he was totally disabled and $7284.16 for lost earning capacity during the 15.77-year period of his life expectancy. Under a second cause of action plaintiff prayed for damages to his auto in the sum of $237.00 and costs of this action.

In defendant's answer and cross petition, she denied all of the material allegations of plaintiff's petition, and alleged that the collision was caused by his negligence in failing to keep a proper lookout, failing to yield the right of way, failing to use the means at hand to avoid the collision, and speeding. Under her first cause of action, defendant alleged, among other things, that her Cadillac "was totally destroyed in the proximate value of $2500.00", for which sum she prayed recovery as damages. Under her second cause of action, defendant alleged that, as a result of plaintiff's negligence, she sustained a severe lumbosacral strain and an aggravation of a pre-existing back condition, for which she prayed damages in the amount of $10,000.00 and her costs.

Thereafter, in January, 1964, plaintiff filed a reply to defendant's answer and an answer to her cross petition. In July, 1964, the parties filed a stipulation, in which it was agreed, among other things, that on January 30 of that year, plaintiff was fifty-eight years of age and had a life expectancy of 17.51 years, and that defendant was twenty-nine years of age and had a life expectancy of 42.16 years; that the damages to plaintiff's car amounted to $237.00 and those to defendant's car were $2500.00. In said stipulation it was also agreed that a certain Altus ordinance said to be attached to the stipulation as "Exhibit A" with reference to the speed of vehicles on said City streets, was in effect "on January 20, 1964."

At the trial, after the City ordinance above referred to was introduced in evidence, the court included among its instructions, without objection, one which stated that the speed limit at the intersection involved was 20 miles per hour. Because the case was tried as if that were the controlling speed limit at said intersection on the date of the collision, and there is no challenge, or dispute, relative to the matter in the briefs filed herein, it will be assumed that this was an established fact.

As a witness for himself, plaintiff expressed his opinion that when he first saw defendant's car in the intersection, a few feet to the left of his, it was traveling 45 miles per hour, and that his own car was traveling "under twenty". He further testified that he was hospitalized for 12 days after the collision, and was in bed on account of it for another 12 weeks, and in a wheel chair for an additional two weeks. His testimony, and medical evidence, generally supported the allegations of his petition as to the nature and extent of his injuries, and his pain and suffering therefrom. Plaintiff's testimony as to which of the two autos reached the intersection first was rather vague and indefinite.

Owen Clark, a member of the Altus "City Patrol" testified as a witness for plaintiff, that he received a call about the accident at 9:35 A.M., the day it occurred, that,

when he arrived at its scene, plaintiff's Studebaker was on the grass and against a cedar tree on the southeast corner of the intersection and defendant's Cadillac was in a yard, between two trees, at the northeast corner of the intersection. This witness further testified, among other things: "From the evidence at hand, the location of * * * the 1959 Cadillac, hit the 1953 vehicle, * * * right in front of the left wheel knocking it completely around in a southeasterly direction." This officer further testified that he did not see plaintiff, but that he talked to the defendant at the "Base hospital", where she was taken in an ambulance after the accident, and that: "She stated that she was driving at least twenty-five miles an hour and when she entered the intersection she saw the other vehicle and she pressed down on the accelerator to try to beat the car across the intersection; tried to get out of its way." The officer further testified that there were no skid marks in the intersection, that "A" Street is 24 feet wide and Lee Avenue is 27 feet wide, where they intersect; that, at the point of impact, defendant's car was 19 feet, 1 inch, and plaintiff's car was 5 feet, 9 inches, into the intersection; that he couldn't say which auto entered the intersection first, but that defendant's auto "probably" did, because of the distance into the intersection (from its western edge) of the point of impact.

In her defense, defendant testified, among other things, that her auto entered the intersection before plaintiff's; that, when her car entered it, she "would say" it was going fifteen miles per hour and that she told the policeman (above mentioned) that "I was going between maybe twenty and fifteen miles an hour." She further testified that she didn't know how fast plaintiff's car was traveling. On cross examination, defendant denied telling the officer that when her car entered the intersection she speeded up to "beat" plaintiff. Other parts of her cross examination, as it appears in the casemade, are as follows:

"Q  Have you had any speeding violations since this accident?

"A  Yes, I have.

"Q  Did you plead guilty in those things?

"A  I did not plead guilty.

"Q  Were you tried?

"A  No, I wasn't tried.

"Q  What did you do about this type of violation?

"  MR. STUBBS: Your Honor, we object to this questioning and move for a mistrial on the grounds that it is improper cross examination, impeaching.

"  MR. WORRELL: *We withdraw the question.*

"  MR. STUBBS: We continue to move for a mistrial, Your Honor.

"  THE COURT: Overruled. The jury will disregard the question. Go ahead.

\* \* \* \* \* \*

"Q  Did you receive a citation from this accident?

"A  *No.*

"  MR. STUBBS: Objection, Your Honor; we move for a mistrial.

"  THE COURT: Overruled; go ahead.

"  MR. STUBBS: I object, Your Honor, and move for a mistrial.

"  THE COURT: It will be overruled.

"  MR. STUBBS: Exceptions. \* \*" (Emphasis added).

At the close of the testimony of the defendant, who was her only witness, the casemade reveals a colloquy between her counsel and the court, in part, as follows:

"MR. STUBBS: Comes now the Defendant and moves the Court to dismiss this cause, both parties having rested, for the reason and on the grounds that on July 21, 1964, notice was served upon the attorney of record for the Plaintiff to furnish him with a tax record for the plaintiff for the years 1961, 1962, and 1963, which would include the United States Federal Income Tax returns,

which has not been furnished to the Defendant; and hereby state that only the tax return for the year 1963 has been furnished which does not comply with the request, and in as much as the income of this individual has been put in issue in this case we are entitled to have this information and hereby move for a dismissal of this cause.

"THE COURT: Overruled.

"MR. STUBBS: We ask that this letter dated July 21, 1964, be offered in evidence as Defendant's Exhibit No. 8.

\* \* \* \* \* \*

"THE COURT: Let the record show here in response to your letter that counsel has submitted the income tax return for the year 1963. It has not been offered in evidence. I don't think it properly belongs in evidence. \* \* \*."

After plaintiff had challenged the sufficiency of defendant's evidence to support her cross petition in so far as she sought $10,000.00 in damages for permanent disability and pain and suffering, and defendant's motion for a directed verdict had been overruled, and the cause submitted to the jury under the court's instructions, a general verdict for plaintiff, and against defendant, in the lump sum of $7,160.00 was returned, and the court rendered judgment on said verdict. After the overruling of her motion for a new trial, defendant perfected the present appeal.

Although her petition in error contains numerous assignments of error, defendant's arguments for reversal of the trial court's judgment are combined under four propositions, and pertain to only a few of said assigned errors.

■ Under her "PROPOSITION III" defendant apparently complains of the trial court's (above shown) overruling of her motion to dismiss the case because plaintiff had not, pursuant to some kind of a previous letter-notice (that does not appear in the record) furnished defendant with his

income tax returns for the years 1961 to 1963, both inclusive, and of said court's refusal to allow her counsel to introduce into the evidence the letter-notice which was offered as her "Exhibit 8." In support of this complaint, her brief states:

"In the action of Application of Umbach, Okl., 350 P.2d 299, this court held that these returns will be furnished upon demand for inspection of the defendant when the income of the party becomes an issue in the action."

There is no merit to defendant's argument; and the quoted statement concerning our holding in the Umbach case exaggerates its scope. No effort was made here, as in Umbach, to obtain the tax returns above referred to by subpoena duces tecum, or by application for a court order enforcing such a subpoena; nor did defendant seek to compel production of these returns at any pre-trial of this case. Since the so-called "notice" referred to above as having been "served upon" plaintiff's attorney on July 21, 1964, does not appear in the record, we have no way of knowing its contents, but it is reasonable to assume that if defense counsel had no response to it during the almost thirty days which elapsed thereafter, before the trial commenced, he had cause to believe that plaintiff would ignore it, and not produce the income tax returns at the trial. If defense counsel wanted this done, he should have timely availed himself of the means provided by law for obtaining such evidence, instead of remaining silent throughout the trial, and first mentioning the matter at the close thereof, as a ground for dismissing the case, after both parties had rested. Under the circumstances existing in this case, we find no error, or abuse of discretion, in the trial court's rulings above shown; and we so hold.

■ Under her Propositions I and II defendant complains of her hereinbefore quoted interrogation concerning charges of speeding lodged against her, with the plain

implication that the court erred in overruling the motions for a mistrial that her counsel interposed during her said cross examination. While we agree that a part of this questioning was improper and was composed in such form as to elicit inadmissible evidence, we fail to find, in the portion of the record referred to, any predicate for reversal. It will be noted from the hereinbefore quoted record that the only question plaintiff's counsel propounded to defendant immediately preceding defense counsel's first motion for a mistrial, was withdrawn before the court ruled on said motion, and the jury was thereupon admonished to disregard it. In this situation, there is no court ruling upon the asking of the question itself, or as to the admission of any incompetent or irrelevant evidence, before us for review. Whether just asking the question of defendant, as to what she had done about her speeding violations, could be considered in the same general category as prejudicial remarks of counsel in the trial of such cases, it would appear that it could not be considered nearly as prejudicial, or damaging—especially after being withdrawn and the jury's being directed to disregard it—as plaintiff's counsel's initial question on the matter of speeding violations, which, without any objection on the part of defense counsel, established that she had had such violations since the accident.

▆ It is the duty of counsel to object to the asking of improper questions and to the admission of incompetent, irrelevant, and immaterial evidence at the time these things occur. An attorney cannot sit idly by until afterward, and then make a vague, general objection that may leave both the trial court and the appellate court in doubt as to just what the objection is directed and as to the proper, or precise, ground upon which it is based. We think the situation here is somewhat similar to the one that existed in Garret v. Lacquement, Okl., 306 P.2d 696, except that there

plaintiff's objection was to a preliminary question concerning an allegedly inadmissible statement, while here, defendant's objection was not made until the claimed inadmissible subject inquired about had already been rather thoroughly explored, without objection. There we noted that when the question was propounded that called for a recital of the statement, no objection was made, nor did plaintiff move to strike the recital. In that case we held that the alleged error complained of had not been preserved for review, and, in the body of the opinion said:

"While 12 O.S.1951, § 630, eliminates the necessity of taking formal exceptions to the rulings of the court, such statute in no wise relieves the parties of the responsibility of making formal objections and giving grounds therefor * * *."

Here, defense counsel merely stated: "We continue to move for a mistrial" after the first quoted question he objected to, had been withdrawn; and, when defendant negatively answered plaintiff counsel's question: "Did you receive a citation from the accident?" defense counsel merely said: "Objection * * *; we move for a mistrial." In our opinion, the record of the only part of defendant's cross examination, to which her counsel's objections and motions were definitely and certainly directed, does not reflect prejudice in, and of, itself. For the purpose of laying a predicate for reversible error, we think plaintiff counsel's withdrawal of the first question and the court's admonition to the jury concerning it, renders defense counsel's first quoted motion for a mistrial as ineffective as the court's ruling on defendant's objections to the first question discussed in Aderhold v. Bishop, 94 Okl. 203, 209, 221 P. 752, 757, 60 A.L.R. 137. He we have a situation analogous to the one in that case, about which the following was said:

"* * * While the questions propounded by counsel were, no doubt, irrelevant under the issues in the case,

nothing prejudicial in fact resulted to the defendants, in view of the objections made and sustained to the first question and the negative answers to the second question propounded; and we see nothing in the mere fact that counsel for plaintiff asked an incompetent question, calling for a public reprimand, or that the mere asking of such question would amount to misconduct on his part. Hollenbeck v. Mo. Pac. Ry. Co., 141 Mo. 97, 38 S.W. 723, 41 S.W. 887."

See also Bowen v. Connecticut Fire Ins. Co. of Hartford, Conn., 193 Okl. 286, 143 P.2d 140, and Indian Territory Illuminating Oil Co. v. Graham, 174 Okl. 438, 50 P.2d 720, syll. 1. It will be observed that defendant's negative answer to plaintiff counsel's query as to whether she had received a "citation from this accident" was favorable to her. In 58 Am.Jur., "Witnesses", § 578, it is said: " * * * an improper question allowed by a court over objection is not ground for reversal where the answer is favorable to the objecting party, * * *". See also 5 Am.Jur.2d, "Appeal and Error", §§ 784 and 804.

■■■■ Under defendant's PROPOSITION IV, she complains of the introduction, as plaintiff's Exhibit No. 4, and during the direct examination of Officer Owen Clark, of an Altus City Ordinance prescribing speed limits in various sectors of the City referred to therein. Defendant's brief states that the exhibit was read to the jury. As to any reading of this exhibit, the case-made merely contains the following "Reporter's Note": "(At this time the ordinance is read by Mr. Worrell, * * *)." Defendant's brief says: "Violation of a city ordinance is a part of the instructions to be given by the court * * *" and that such procedure was "a violation of the order of the trial of the cause", though counsel concedes therein that "he is unable to find any case or citation in the case law on this point * * *". If we assume, without deciding, that the subject of defendant's complaint was irregular, and an error in procedure, under our harmless error statutes, Tit. 12 O.S.1961, §§ 78 and 636, and Tit. 22 O.S.1961, § 1068, there would still have to be a showing of prejudice to defendant therefrom (as is necessary in regard to other errors defendant complains of) in order for it to be ground for reversal. See Layton v. Purcell, Okl., 267 P.2d 547, 553, and other cases digested in 2A Okla.Dig., under Appeal & Error ⊜1030. Here, there is no such showing. Defendant makes no complaint that the jury was not fully and properly instructed, that the judgment in plaintiff's favor was excessive, or that it was without sufficient evidence to support it. Consequently, we may say here, as we did in Missouri-Kansas-Texas Railroad Co. v. Jones, Okl., 354 P.2d 415, 422:

"* * *

"In the absence of any claim of excessiveness in the amount of the verdict, we consider it conceded that its amount was amply supported by the undisputed evidence of plaintiff's damages. * * *"

We may further say, as to the alleged errors complained of here, that we are not called upon to weigh the evidence or to attempt to thereby discover some showing that the verdict would have been different had they not occurred. To further paraphrase what was said in the Jones Case: There is no question but that the verdict and judgment in this case are within the issues, and, after reviewing the evidence, we have determined that they are not without competent evidence reasonably tending to support them on the issue of defendant's liability. Disregarding the size of the verdict, we have found in none of defendant's arguments, which are supported by the record, anything to render it probable that the verdict would have been different had the alleged errors, of which defendant complains, not occurred. Accordingly, the judgment of the trial court is hereby affirmed.

All the Justices concur.