FRANK FRUIDE V. STATE OF NEBRASKA.

FILED NOVEMBER 6, 1902. No. 12,670.

Commissioner's opinion, Department No. 2.

1. **Selling Intoxicating Liquors:** EVIDENCE: REVENUE STAMP OR GOVERNMENT LICENSE: CIRCUMSTANCE: EXPLANATION. In a prosecution for selling intoxicating liquors in violation of section 11, chapter 50, Compiled Statutes, Nebraska, the fact that the defendant kept in his place of business a United States internal revenue stamp, commonly called a government

license, for the sale of intoxicating liquors, may be received in evidence as a circumstance tending to show that defendant was engaged in the business of selling intoxicating liquors, but for no other purpose; and when such evidence is admitted, the defendant·should be permitted, if he so offers, to explain his possession of such revenue stamp for any other purpose.

2. **Criminal Evidence:** DETECTIVES: INSTRUCTION. In a criminal prosecution where the state relies on the evidence of detectives employed for the purpose of procuring testimony against the accused, it is reversible error to instruct the jury that they should give to the testimony of such detectives "the same consideration as to any other testimony in the case, giving it such weight as, considering the nature of the same, their opportunities for knowing the facts of which they testify and their appearance and demeanor upon the witness stand, and all the other elements which go to their credibility. including their interest and bias, and to give their testimony such weight as under all circumstances the same is, in your judgment, entitled to receive."

ERROR from the district court for Polk county. Tried below before SORNBORGER, J. *Reversed.*

*Mills & Mills* and *King & Bittner,* for plaintiff in error.

*Frank N. Prout, Attorney General,* and *Norris Brown,* for the state.

OLDHAM, C.

In this case the defendant in the court below was prosecuted on an information charging him with selling intoxicating liquors in violation of section 11, chapter 50,* Compiled Statutes of Nebraska. There were seven counts in the information. The defendant was found guilty on two counts, and from the judgment and sentence on these counts, brings error to this court.

One of the alleged errors called to our attention in the brief of plaintiff in error, defendant below, is the action of the trial court in permitting the state to show that the defendant had in his place of business a United States internal revenue stamp, commonly called a government license, for the sale of intoxicating liquors during the year

---

* **Cobbey,** Annotated Statutes, sec. 7161.

1901. The only objection interposed to the admission of this evidence was that the revenue stamp appeared to have been seen in defendant's possession in the month of August, while the sales charged were alleged to have taken place in the month of September. No objection was made, however, as to the relevancy or competentcy of the evidence, and later, when the defendant testified in his own behalf, the state was permitted, without objection, to inquire into his possession of this revenue stamp or government license. The defendant was also permitted to explain his purchase of this revenue stamp on a theory in harmony with his claim that he had no intoxicating liquors at his place of business. We think it is competent, in a prosecution under section 11, chapter 50, to show that the defendant kept in his place of business a United States internal revenue stamp or government license merely as a circumstance tending to show that he was engaged in the business of vending intoxicating liquors. We also think that when such evidence is admitted on the part of the state, it is proper for the court to permit the defendant to explain this circumstance on a theory consistent, if possible, with the claim that he had no intoxicating liquors at his place of business. This the court appears to have done in the trial of this case, and by an instruction confined this testimony strictly to the purpose for which it was admitted. We think, under this state of the record, that the action of the trial court was fully warranted.

In our view, a more serious question is presented by the action of the trial court in refusing paragraph No. 1 of instructions requested by the defendant below, and giving in its stead paragraph No. 9 of instructions on its own motion. In the prosecution of this case, the state was compelled to rely for the proof of the sales charged solely on the testimony of two members of a detective association at Lincoln, who admitted that they had been employed to procure testimony against the defendant by the officers of another association in that place. On the other hand, the defendant relied solely on his own testi-

mony and the testimony of his wife in denial of the evidence of these detectives. There was some effort made to corroborate each side of the controversy, but there was nothing introduced that could be construed as a corroboration of the state's witnesses, unless it was the possession of the government revenue stamp, which the defendant admitted, and, as we have before indicated, attempted to explain on a theory consistent with his claim that he had no liquor at his place of business. It seems to us that in this state of the record an instruction with reference to the care and caution that should be taken in weighing the testimony of hired detectives should be given with all the force and virility that this court has ever exacted. Paragraph No. 1 of instructions requested by the defendant below was drafted in the language of an instruction on detective testimony which was approved by this court in *Preuit v. People,* 5 Nebr., 377, and has been quoted with commendation in many other cases down to and including *Sandage v. State,* 61 Nebr., 240. The court, however, refused to give this approved instruction, and in its stead told the jury with reference to detective testimony that: "You are at liberty, and ought to treat such testimony in the light of testimony given by interested witnesses, and give their testimony closer scrutiny before accepting its truth, than if they were wholly disinterested witnesses; yet you have no right as jurors to disbelieve such witnesses solely and only for the reason that they have been thus employed; but you should give to their testimony the same consideration as to any other testimony in the case, giving it such weight as, considering the nature of the same, their opportunities for knowing the facts of which they testify and their appearance and demeanor upon the witness stand, and all the other elements which go to their credibility, including their interest and bias, and to give their testimony such weight as under all the circumstances the same is, in your judgment, entitled to receive." It will be noticed that this instruction simply classifies detectives as interested wit-

nesses, and tells the jury that such evidence should receive the same consideration as any other testimony in the case; that is, that they should simply consider the bias or prejudice that the witness might have in the case. If we have not mistaken the rule established by this court in *Preuit v. People, supra,* and *Sandage v. State, supra,* this court has set apart the testimony of hired detectives in a class separate and apart even from that of ordinarily interested witnesses who have a bias or prejudice for one or the other of the contending parties; and to give full force to an instruction on the caution to be used in weighing detective testimony, the reason for such caution should be contained in the instruction, and especially is this true where a proper instruction, containing the reason, has been requested by the defendant, as in the instant case. In the case of *Sandage v. State, supra,* the defendant had requested an instruction similar to the one requested in this case, and the court refused to give it. Its action in this matter was assigned as error and this court, speaking through HOLCOMB, J., says: "The defendant on the trial, and after the introduction of such testimony, requested an instruction to the jury to the effect that in weighing such testimony, greater care should be exercised in relation to the testimony of a detective employed in hunting up evidence, who is interested in or employed to find evidence against the accused, than in other cases; because of the natural and unavoidable tendency and bias of the mind of such person to construe everything as evidence against the accused, and to disregard everything which does not tend to support a preconceived opinion of the matter in which such person is engaged. The instruction was drawn in conformity with the rule as announced by LAKE, C. J., in *Preuit v. People,* 5 Nebr., 377, and should have been given." We are therefore of the opinion that it was error in the trial court to refuse instruction No. 1 requested by the defendant below, and give in its stead the part of paragraph No. 9 of instructions set forth in this opinion.

It is therefore recommended that the judgment be reversed, and the case remanded for further procedings.

BARNES and POUND, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be reversed, and the case remanded for further proceedings according to law.

REVERSED AND REMANDED.

NOTE.—*Intoxicating Liquors—Internal Revenue Tax—United States License—State Law.*—A license from the United States, under internal revenue laws, conveys to the licensee no authority to carry on the licensed business within a state. The requirement of payment for such license is only a mode of imposing taxes on the licensed business, and the prohibition, under penalties, against carrying on the business without a license is only a mode of enforcing the payment of such taxes. A government license, therefore, can not be used as a shield against the enforcement of state laws. It is purely and simply a form of taxation; for the internal revenue laws are enacted solely as a means of raising revenue. They have no effect upon the internal police of the states, with which congress has nothing to do, and can not be construed as evincing an intention to either legalize or regulate the traffic in intoxicating liquors. That the dealer has already paid a tax to the United States, gives him no claim to immunity from state or municipal taxation. And if his business is put under the ban of state law, his government license is no justification for his continuing it. All persons or corporations engaging in the traffic, are subject to pay the United States tax. For example, a city, if it distills and sells spirits, whether authorized by its charter or not, must pay the tax. And the stockholders of a corporation engaged in operating a distillery are "persons interested in the use of the distillery," within the meaning of the statute which declares that all such persons shall be jointly and severally liable for taxes imposed by law on the distilled spirits produced therein. Black, Intoxicating Liquors, sec. 113.

Where a municipal corporation by its officers and agents engages as a distiller of spirituous liquors, sells the same without paying the gallon tax thereon, receives the benefits of such business and appropriates the proceeds thereof to the public treasury, it is liable to the United States for the amount of the gallon tax on all spirits so distilled and sold, although all of such acts are authorized by its charter; money paid to a revenue officer on the assessment of such tax, although paid under protest, can not be recovered back. *Salt Lake City v. Hollister*, 3 Utah, 200, 2 Pac. Rep., 200.

A liquor license granted under the United States internal revenue

Fruide v. State.

laws, is in its effect only a receipt for taxes; *ergo* a prohibitory law passed by a territorial legislature does not conflict with the revenue laws of the United States granting license to sell intoxicating liquors. Such license implies nothing more than that the licensee, having paid such taxes, shall be subject to no penalty under federal law. *Territory v. O'Connor*, 5 Dak., 397, 408. Opinion by Tripp, C. J.

The prohibition under penalties of carrying on the business of a liquor-dealer without license, is only a mode of enforcing the payment of taxes. *License-Tax Cases*, 5 Wall. [U. S.], 462.

The stockholders of a corporation engaged in the operation of a distillery, are liable for the license-tax. *United States v. Wolters*, 46 Fed. Rep., 509.

*South Carolina—Dispensary—Internal Revenue—Court of Claims.*—At the democratic primaries held in South Carolina in August, 1892, the question of prohibition or license was voted on. The vote stood: Prohibition, 38,890; license, 29,464; while 20,008 of those voting did not express themselves on the question. The next state legislature adopted what is known as the Dispensary Law. The bill was introduced in the state senate by John Gary Evans, of Aiken—afterwards governor of the state and candidate for United States senator —as a substitute for a prohibitory bill which had passed the house. The real author of the bill was the then governor, Benjamin R. Tillman, who took his cue from the town of Athens, Georgia. Space forbids setting out the details of this law. Let it suffice to say that, under its terms, the state has the selling of all liquor within its confines by means of dispensaries established in towns throughout the state, one-half the revenue going to the state, a fourth to the municipality and a fourth to the county. The term "dispensary" appears to have been borrowed from the nomenclature of scientific charity to designate a place where medical and surgical aid are furnished to poor people free of charge.* A suit brought to test the constitutionality of the law was decided adversely to the state before the court of common pleas, Hudson, J., presiding. The learned judge took the position that the law embraced two distinct acts of legislation: (1) prohibiting the sale of intoxicants by private persons, which was within the scope of legislative authority and, therefore, constitutional and valid; (2) providing for a state monopoly of the liquor traffic, which was beyond the scope of legislative authority and, therefore, unconstitutional and void. Affirmed by the supreme court, McIver, C. J., delivering the opinion; Pope, J., dissenting. *McCullough v. Brown*, 41 S. Car., 220. The idea of the dispensary part of the act being an inducement to the repeal of the license law and the enactment of prohibition, "except as herein provided," does not appear to have suggested itself to either court or counsel;† and in a later case the supreme court held the license

---

* The word *dispensary* occurs in the Maine and Kansas statutes.

† Since this note was written, it has been suggested to the writer, by a learned jurist, that the main feature of the South Carolina law was prohibition and the dispensary a mere exception. Were not the repeal of license and the enactment of prohibition mere incidents to the dispensary system?—W. F. B.

law to have been repealed. *Barringer v. Florence*, 41 S. Car., 501. *These are nota-bene decisions for both lawyers and legislators.* The application of such a principle to the amendment of the Criminal Code, might produce a general gaol-delivery. While these actions were pending, a second dispensary law had passed the legislature, which differed little from its predecessor. It is not improbable that this was passed to relieve the court from a possible application of the principle of *res judicata.* In interpreting the new law, the court refused to be bound by the rule of *stare decisis* and expressly reversed its former decision, holding the law constitutional. The personnel of the court had changed. Mr. Justice Gary, who had succeeded Mr. Justice McGowan, delivered the opinion, which was concurred in by Mr. Justice Pope, who had dissented from the former decision; and McIver, C. J., who had delivered the former decision, dissented from this one. *State v. Aiken*, 42 S. Car., 222.

The state has always paid the revenue-license taxes for its dispensers; but she sued in the court of claims for the recovery of the amount paid. The points made were (1) that the term "person" is everywhere used in the United States revenue laws to designate a distiller, fermenter or dealer, and a state is neither a natural nor an artificial person, but sovereign; (2) that the United States constitution is an instrument of grants and not of restrictions; and the only power to impose taxes upon a state found in that instrument is in clause 2, section 3, article 1, which grants no power to levy an indirect or even a direct tax, except it be apportioned between the states, as therein stated. *Contra:* The state dispensers are the dealers in distilled and fermented liquors; and they can no more be protected by the appointment of a state than the licensee named in the United States revenue receipt for taxes is, thereby, protected from a police regulation of the state. See foregoing note. February 29, 1904, the court, by Nott, C. J., delivered an opinion adverse to the state, Wright, J., dissenting from some of the reasoning of the court, but concurring in the conclusion. The pith of the opinion is in the following sentence taken therefrom: "The exemptions of sovereignty extend no farther than the attributes of sovereignty." On March 4, 1904, an appeal was taken to the United States supreme court. The result will be watched with interest.

May 31, 1897, Judge Simonton of the federal circuit court handed down an opinion adverse to the state upon a bill in equity involving the question of interstate commerce, brought by a California corporation against the dispensary commissioner of South Carolina. *Vandercook v. Vance*, 80 Fed. Rep., 786. The case was taken to the United States supreme court; and, in the following March, an opinion was handed down by Mr. Justice White which modified the decision of the circuit court, and held that the purchaser within the state could receive the package, but could not dispose of the same contrary to state law. *Vance v. Vandercook*, 170 U. S., 438.

The total amount of United States internal revenue collected, between 1895 and 1901, from the state dispensary commissioner was

$22,840.71. The state's net profit for the year 1901 was $545,248.12. The number of county dispensaries for the year last named was 101. The term "corporation" does not include state. *State v. Atkins*, 35 Ga., 315. The terms "corporation" and "person" are broad enough in statutory construction to include the corporate side of a government or municipality. *Republic of Honduras v. Soto*, 112 N. Y., 310.—W. F. B.*

4. ——: NUMBER: RATIO. Under the provisions of section 1, chapter 91*a*, Compiled Statutes, the number of dealers who engage in such unlawful combination and the proportion they bear to the whole number of dealers in the same trade, is not material.

5. ——: RIGHT OF ACTION. A dealer who is injured in any way by such an unlawful combination may bring an action under

---

* Ex-Governor, now Senator, Tillman read and corrected the proof of the above note.—W. F. B.