Koran v. Cudahy. Packing Co.

---

PETER KORAN, APPELLEE, v. CUDAHY PACKING COMPANY, APPELLANT.

FILED DECEMBER 29, 1916. No. 19077.

1. Jury: IMPANELING: PEREMPTORY CHALLENGES. A custom prevails in Douglas county in civil cases that eighteen jurors who have passed their *voir dire* examination be called into the jury box, and counsel for each side then strike off three names peremptorily. Counsel for defendant, after striking the names of three jurors in this manner, was denied the right to challenge three other jurors peremptorily from the twelve remaining in the box. *Held*, that having acquiesced and participated in peremptorily challenging three men in accordance with this custom, the defendant waived its right to exercise other or further peremptory challenges.

2. Master and Servant: INJURY TO SERVANT: LIABILITY OF MASTER. Where a foreman ordered a workman to hurry, and furnished him a defective box to stand upon, in order to facilitate the work he was doing, the defect in which was not obvious to the workman,

he was entitled to rely upon the foreman's selection of the box as a safe place upon which to stand.

3. **Appeal:** CROSS-EXAMINATION. A judgment will not be reversed merely on account of an extended cross-examination on an immaterial matter, unless it clearly appears that the substantial rights of defendant have been prejudiced.

4. **Master and Servant:** ACTION: APPEAL: EVIDENCE. Where there is direct testimony that the plaintiff, who has theretofore been in sound health, received an injury to the abdomen from striking the edge of a vat over which he was working, on account of the slipping of a defective box on which he stood, which resulted in a severe pain and a bruised condition of the lower abdominal region, and was soon followed by hernia, an operation for which was performed in a short time, it was not erroneous to permit certain medical witnesses to testify that hernia might have resulted from such a fall.

APPEAL from the district court for Douglas county: ALEXANDER C. TROUP, JUDGE. *Affirmed.*

*James C. Kinsler,* for appellant.

*Herbert S. Daniel, John A. Moore, B. H. Dunham* and *Herman Aye, contra.*

LETTON, J.

The plaintiff, a man about 25 years of age, was a workman in the employment of defendant at its packing house in South Omaha. It was his duty two or three times a week to remove sides of pork from certain wooden pickle vats about four feet deep and four feet across, in which the meat was pickled in a solution of salt and water. The water had been let out of the vat about nine days before. Plaintiff used a hook with which to pull the meat out of the vat. He piled it on a truck and took it to the butchers in an adjoining room to be trimmed and prepared for market. He had been engaged in this employment for about three years under the same foreman. On the day of the accident he had emptied one truck-load. He testifies that as he was starting the second load the foreman ordered him to hurry, saying that there were six butchers waiting for

him, without meat, and asked him why he did not take a box to stand on. Plaintiff answered that he had nothing for that purpose. The foreman then kicked a box over to him against the vat and told him to stand on it. The box was a soap box about two feet long, eighteen inches wide, and nine inches deep. While plaintiff was standing on this box with his head down in the vat, reaching to the opposite side, and pulling a piece of meat with the hook, the box tilted and slipped backwards from underneath him, allowing him to fall upon the edge of the vat, bruising his body and causing severe pain in the lower part of his abdomen. After the accident he examined the box and found that a part of the side and one end, about two inches deep, was split off from the bottom edge, so that as he reached over it tilted and slid along the floor, causing the fall. He felt severe pain about three inches below the navel and three inches to the right of it. He felt weak and vomited, and afterwards the parts began to swell and became discolored. He consulted Dr. Riley, the doctor at the plant, about 4 o'clock the same afternoon, and he sent him to Dr. Koenig. The room in which he worked was about 100 feet square filled with tanks in rows, with no windows. It was lighted by small electric lights, apparently carbon lamps about 25 or 30 feet apart. The box was brought into the room by the foreman. After he fell he explained to the foreman that the box tilted, and he said that he saw that box yesterday, it was broken, and he forgot to throw it away. He went to Dr. Koenig's office, to Dr. Chaloupka, and afterwards to Dr. Lord, on Dr. Koenig's recommendation. Under Dr. Lord's direction he was taken to the hospital and operated upon for inguinal hernia. After being out of the hospital eight or nine days Dr. Lord sent him back, and performed a second operation upon him for appendicitis. The accident was on March 13, 1912. In September, 1913, he was sent to the hospital again by Drs. Chaloupka and Tyler, where he was kept in bed for

about a month for rectal treatment. He had never had any pain or difficulty with his bowels before the accident. Since the first operation he has had a lump upon his left side about two inches thick and three or four inches long, and often has cramps on that side. He had this trouble at the time of the operation for appendicitis. He again went to the hospital in March, 1914, where he remained 58 days in bed for treatment for the same trouble, and again in August. He has not been able to work since the injury, except about six days, and has constant pain. At the time he was hurt he was earning 19 cents an hour and worked from 10 to 15 hours a day, making from $56 to $62 a month. He had never been sick before the accident. He has lost 30 pounds in weight. He has spent about $1,296 for doctors and hospital expenses. On cross-examination it was shown that he actually paid but a small part of the fees due for medical care. Two other witnesses corroborated his testimony as to the use of the box, and told of his gestures and of his expressions of pain. For the defense, the foreman denied giving him any directions to use a box that day, denied furnishing him a box to stand on, and denied remarking about its condition afterwards. It was proved without dispute that it was a common thing for men engaged in taking meat from the vats to use boxes to stand on, which they procured from an adjoining room. There was testimony—disputed—to the effect that, when one Hall was sent with plaintiff to inquire into the accident, he did not say that the foreman had given him the box or ordered him to stand on it. A verdict of $20,000 was rendered for plaintiff. Defendant appeals.

In its brief defendant has set forth 204 assignments of error. Many of these relate to matters, as to which, even if it be conceded that error occurred, it was obviously not prejudicial to defendant. The presentation of so many points, many of which cannot have been seriously relied upon for a reversal, entails needless work both upon counsel and upon the court, and is a practice not

to be commended. It is the duty of the court under section 7713, Rev. St. 1913, to disregard any error in the proceedings which does not affect the substantial rights of the complaining party, and no judgment can be reversed for any such error.

The first assignment relates to the refusal by the court to sustain defendant's objection to questions asked on the *voir dire* examination of jurors as to their acquaintance with the Casualty Company of America, and the further inquiry as to whether the juror was a stockholder or officer or in any way interested in a casualty company. Under the circumstances, to the writer's mind it seems that these questions were asked, not for the *bona fide* purpose of ascertaining whether the jurors had a legal interest in the Casualty Company of America, but for the purpose of insidiously and by indirection presenting to their minds the idea that an insurance company was defending the case, and not the Cudahy Packing Company. However, in *Egner v. Curtis, Towle & Paine Co.,* 96 Neb. 18, this court held that such examinations may be permitted, and the district court was justified in following that decision.

It is next assigned that the trial court erred in denying defendant's request for leave to exercise its right of peremptory challenges against three jurors, the request being made before the jury was sworn. It is said that the courts in Douglas county have adopted the practice of calling eighteen jurors into the box to be examined upon their *voir dire,* and counsel for each side are then directed to strike off three names, thus reducing the panel to twelve. Counsel for defendant, after striking the names of three jurors in accordance with this custom, desired to challenge three more from the twelve jurors remaining in the box. Having acquiesced and participated in removing three men peremptorily in accordance with the custom, defendant waived its right to exercise peremptory challenges by the other method.

The next point argued is that, since the box upon which the plaintiff stood was a simple appliance, the case falls under the doctrine announced in *Vanderpool v. Partridge,* 79 Neb. 165, that, while the law requires the master to provide reasonably safe tools and appliances, yet the rule has no application where the servant possesses ordinary intelligence and knowledge and the tools and appliances furnished are of a simple nature in which defects can be easily observed by the servant. But if the plaintiff's testimony is true, the foreman admonished him to hurry, and selected a defective box, which he kicked over toward him, and told him to stand upon it. Plaintiff had no opportunity, and, under such circumstances, it was not his duty to examine the box. He had a right to rely upon the foreman's selection of a safe place upon which to stand. The rule in *Vanderpool v. Partridge, supra,* does not apply.

Several other assignments of error are based upon the contention that the principles set forth in a number of the instructions given by the court are not applicable to the facts in the case, and were therefore prejudicially erroneous, and that the evidence does not sustain the verdict. Of course, if the facts in the case had been found by the jury to be as the defendant insists, then the instructions would have been erroneous; but the evidence warranted the jury in taking a different view. The instructions were not inconsistent with the evidence, viewing it from the plaintiff's standpoint.

Over 30 assignments of error are made with respect to the admission of the testimony of certain medical witnesses. The court permitted a very extended examination of each of these witnesses by defendant. Among the complaints is that the court permitted each of these witnesses to testify that hernia *might* have resulted from a fall that plaintiff describes. There was direct testimony as to the condition of plaintiff for several years before the injury, and as to his appearance and condition almost immediately afterwards. When this

evidence is considered in connection with that of the two doctors, we can see no prejudice to defendant in the admission of their testimony.

It is contended the evidence does not justify a finding that either hernia, appendicitis, or a spastic condition of the colon was the result of the accident. It is shown that in many instances such a fall would not cause a rupture, but there is nothing to show that plaintiff was ruptured before he fell. He was soon afterwards operated upon for hernia. It is also shown that in such cases it is not infrequent that the appendix slips down with the intestines into the scrotal cavity and is often irritated and inflamed as a result of this displacement; that plaintiff suffered from pain on both sides of the abdomen after the operation for hernia; that this was diagnosed as caused by appendicitis, and that he was operated upon and the appendix removed. The pain continued on the left side, and an X-ray examination shows that a spastic condition of the colon continued after both operations, and from which plaintiff still suffers. The medical testimony shows that these contractions of the colon are due to a failure in nerve control of the peristaltic motion. Plaintiff was treated in the hospital for some time for this affection, and the doctors testify it may continue indefinitely.

Considering all the evidence, it is sufficient to justify the finding by the jury that the hernia and resulting complications were caused by the fall. Much complaint is made as to the latitude of cross-examination of a witness who had investigated the accident soon after its occurrence for the attorney for defendant, and of the request or demand made in the presence of the jury that he produce a copy of the report he made to his employer. Much of the examination was immaterial, and, to use a slang expression, the demand for a copy seems to have been "a grand-stand play," and should not have been made, but still we would not be justified in reversing the judgment on that ground.

700          NEBRASKA REPORTS.          [VOL. 100

State, ex rel. Nebraska State Railway Commission, v. Missouri P. R. Co.

As to the amount of the judgment, if the doctors are correct, the spastic condition of the colon is apt to continue indefinitely and to cause great pain and annoyance. Plaintiff suffered great pain, had several operations, lay in hospitals for months, and has been unable to work much since. He was 25 years old when hurt and has a long expectancy.

The judgment seems excessive but plaintiff has remitted all damages in excess of $5,000. The judgment is therefore reduced to the sum of $5,000, and, as so reduced, is

AFFIRMED.