EUGENE FIELDING, APPELLEE, V. PUBLIX CARS, INC., ET AL.,
APPELLANTS.

FILED MARCH 13, 1936. NO. 29514.

*Wear, Boland & Nye,* for appellants.

*Gaines, McGilton, McLaughlin & Gaines, L. Q. Hills* and *Bernard R. Stone, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

CARTER, J.

In this action the plaintiff sued the defendants for damages for personal injuries sustained while riding in a cab belonging to the Publix Cars, Inc. The jury returned a verdict for $5,000 and judgment was entered thereon. From the overruling of their motion for a new trial, defendants bring the case to this court on appeal.

The evidence of the plaintiff was to the effect that he hired the cab to take him to his home, and, while so doing, the cab driver suddenly and without warning applied his brakes and caused plaintiff to be thrown forward against the front seat of the cab. The evidence further shows that

plaintiff suffered a broken jaw and complications as a result thereof that necessitated many operations, much pain and suffering, and a scarred and misshapen face and jaw.

Defendants complain of the action of the trial court in permitting the plaintiff to show by the president of Publix Cars, Inc., on direct examination, that Publix Cars, Inc., carried liability insurance. The record discloses that plaintiff called Guy Thomas, president of Publix Cars, Inc., as a witness and adduced the following testimony: "Q. Do you carry a policy of automobile insurance protecting your company against accidents to persons driving and riding in your cabs for fare? Do you carry such a policy of insurance? * * * A. Yes; we carry a five-thousand dollar policy." The defendants objected to this question before the answer was given, for the reason that it was incompetent, immaterial and irrelevant, and not within the method of procedure laid down by the supreme court in similar cases. The overruling of this objection is assigned as reversible error.

It is the contention of plaintiff that the evidence was admissible to prove ownership of the cab and that the relation of master and servant existed. The plaintiff alleges in his petition, however, that one Reynolds was the owner of the cab in which the accident occurred, so that the evidence could not have been properly admitted for that purpose. We agree with plaintiff's counsel that evidence that defendant carried liability insurance is admissible to prove the relation of master and servant, or any other relation upon which liability can be predicated, where, as in the case at bar, it is an issue under the pleadings. *Biggins v. Wagner,* 60 S. Dak. 581, 245 N. W. 385; *Burns v. Getty,* 53 Idaho, 347, 24 Pac. (2d) 31; *Gayheart v. Smith,* 240 Ky. 596, 42 S. W. (2d) 877. But, in the case at bar, the form in which the question was asked precludes this argument because it shows on its face that it did not tend to prove any such issue. The question asked made no reference to the cab in which plaintiff was riding at the time of the accident and was clearly offered for the purpose of informing the jury

that an insurance company, and not the defendants, would pay any judgment they might render. Plaintiff also contends that the evidence that defendants carried liability insurance was admissible under the rule of practice adopted in the case of *Jessup v. Davis,* 115 Neb. 1, 211 N. W. 190, and cites *Nichols v. Owens Motor Co.,* 121 Neb. 105, 236 N. W. 169, and *Combs v. Owens Motor Co.,* 121 Neb. 5, 235 N. W. 682, to sustain his contention. It is true that in those cases it was held that it was not prejudicially erroneous for plaintiff to show on his case in chief that defendant carried liability insurance, but in those cases it was not contended that the judgments were excessive, and the error of the trial court in permitting it to be shown could not have been prejudicial to the defendant. But such is not the situation in the case at bar. We hold that the evidence in question did not fall within the rule of practice set out in *Jessup v. Davis, supra,* such rule being as follows: "Where a plaintiff in a personal injury action seeks by appropriate interrogatories on the cross-examination to discover whether the defendant is indemnified from loss by an insurance company, it is error for the court to sustain an objection to interrogatories which tend to develop the fact on that question." See *Miller v. Central Taxi Co.,* 110 Neb. 306, 193 N. W. 919. We therefore hold that the admission of the evidence relative to liability insurance was prejudicially erroneous.

Defendants contend that the rule of practice promulgated by this court in the case of *Jessup v. Davis, supra,* is unsound and not sustained by legal authority, and request a reconsideration of the rule by this court. The question whether the plaintiff has a right to show that the defendant carries liability insurance first came before this court in the case of *Egner v. Curtis, Towle & Paine Co.,* 96 Neb. 18, 146 N. W. 1032. In that case the court announced the following rule: "Where a defendant, in a personal injury action, is indemnified by an employers' casualty insurance company, it is proper for plaintiff's counsel to show such fact when impaneling the jury, and to inquire of each juror

upon his *voir dire* if he is a stockholder or agent, or in any manner interested in such company." This rule was followed in *Koran v. Cudahy Packing Co.,* 100 Neb. 693, 161 N. W. 245, and *Penhansky v. Drake Realty Construction Co.,* 109 Neb. 120, 190 N. W. 265. The right of counsel to interrogate jurors on their *voir dire* examination in order to determine whether it is expedient to challenge any of them peremptorily, within proper limits, cannot be denied. The authorities differ on this question on the method of interrogation to be employed rather than on the right. We are impressed with the method approved by the Michigan court in the case of *Holman v. Cole,* 242 Mich. 402, 218 N. W. 795, wherein the court say: "In the case before us, the inquiry referred to a foreign corporation. We feel forced to the conclusion that the purpose of counsel in asking each one of the jurors called if he was interested as a stockholder in such company was not for the purpose of obtaining information, but to impress upon their minds that the defendant was protected by insurance and would not be personally liable for any judgment entered in the case. If information alone was sought, it might easily have been obtained by asking the jury collectively if any of them were stockholders in any corporation, and, if they were, to have asked the kind of a corporation they were interested in." We can conceive of situations even under the foregoing rule where it would be necessary to go into the question further and bring out the name of the insurance company involved. We cannot say, therefore, that the rule heretofore announced with reference to the interrogation of juries on *voir dire* on this subject is unsound. The limits to which counsel may go in interrogating the jury must rest largely in the discretion of the trial court, viewed in the light of the situation as it comes before it.

But, where the plaintiff shows that defendant carries liability insurance, when it is not relevant to some issue in the case, we have come to the conclusion that it is inadmissible. Such evidence can have no relevancy to the question of negligence. It cannot be disputed that there are cases

where liability insurance may be the subject of evidence, or the object of interrogatories, if the fact of insurance bears upon an issue in the case. In other words, if the evidence is properly admissible for any purpose, it cannot be excluded for the reason that it tends to prejudice the defendant because it shows or tends to show that he carries liability insurance. We have examined with care the opinion in the case of *Jessup v. Davis, supra,* as well as the opinions of the court of appeals of the District of Columbia, three circuit courts of appeal and the courts of last resort in 40 sister states, all holding to the contrary. We will not take the space to quote from each of these holdings. A discussion of a large number of cases contrary to *Jessup v. Davis, supra,* and supporting the rule we now believe to be the correct one, will accomplish no good purpose. We will, however, cite a few authorities that we believe state the better rule.

In dealing with this question, the court in *James Stewart & Co. v. Newby* (C. C. A. 4th Circuit) 266 Fed. 287, said: "This court must take cognizance of the general recognition among the members of the bar, as well as by the courts, of the harmful effect upon the minds of jurors of such testimony as was here sought to be introduced. The only purpose for which such evidence is presented is to prejudice the jury, and the poison is of such character that, once being injected into the mind, it is difficult of eradication. Where it is allowed to remain during the whole course of a trial, and by persistent unrebuked references is allowed to influence the jurors' consideration of all the other evidence during the trial, the antidote of a final instruction to disregard the testimony is ineffective. The removal of the fly does not restore an appetite for the food into which it has fallen. * * * Verdicts cannot be relieved of the danger of criticism as long as there is a basis for the opinion that they have been rendered through the influence of prejudice."

In *Brown v. Walter* (C. C. A. 2d Circuit) 62 Fed. (2d) 798, Judge Learned Hand, speaking for the court in a case involving this question, said: "There can be no rational

excuse, except the flimsy one that a man is more likely to be careless if insured. That is at most the merest guess, much more than outweighed by the probability that the real issues will be obscured. * * * In the case at bar, save for the cross-examination of the doctor, there was no excuse for even an intimation that the defendant was insured; if that witness is not called upon the next trial, there will be none whatever, and unless the insurance is scrupulously kept from the jury, a mistrial should be declared. The prevalent knowledge that in such cases insurance is usually taken, is a hard enough handicap at best; it is difficult in any event to get a decision on the real issues."

In *Edwards v. Laurel Branch Coal Co.*, 133 Va. 534, 114 S. E. 108, the court said: "It is clear, both upon reason and authority, that the court was right in refusing to permit the question to be answered. That the company carried liability insurance was wholly irrelevant, and that the protection thus afforded may have tended to render them less careful than they would otherwise have been was likewise wholly irrelevant, because the question of liability depended upon the fact of negligence, and not upon the motives or influences which may have brought it about."

In *Patterson v. Surpless*, 107 N. J. Law, 305, 151 Atl. 754, the court said:

"To propound to the jurors a question as to their stockholdings in the insurance company named could have had but one purpose and effect, viz., to prejudice the jurors against the defendants in the trial of the case. It would at once instill in their minds the thought that the defendant would ultimately not be called upon to pay any verdict that the jury might render, but that this burden would fall upon an insurance company which had been paid to take the risk. The prejudicial effects of such an impression are obvious and can scarcely be magnified.

"Courts exist for the judicial determination of the rights of litigants and for the administration of justice, and it is the duty of those presiding, as far as humanly possible, to see that the setting of each individual case shall be such

that an impartial and just deliverance shall be had between the parties, and when counsel deliberately seeks to inject into a cause an element which has, and is designed to have, the effect of prejudicing the rights of one or the other of the litigants, it is the duty of the judge to guard against such effect, either by arresting the trial *in limine,* as was requested in the present case, or by guarding against the pernicious results through proper instruction to the jury as was clearly indicated in the opinion cited above."

In *Brooke v. Croson,* 58 Fed. (2d) 885, the court said: "It is established by the overwhelming weight of authority that as a general rule it is reversible error in the trial of an action for damages for personal injuries suffered in an automobile accident to permit the plaintiff to introduce evidence to show that the defendant is protected by liability insurance against such accidents. It is held that such evidence is not relevant to the issue of negligence, and can have no effect but to induce a verdict based on the fact that an insurance company, and not the defendant, must pay the award."

In *George A. Fuller Co. v. Darragh,* 101 Ill. App. 664, the court said:

"None of the learned counsel for appellee will gravely contend that whether appellant had procured insurance against liability for accidents or whether the suit under consideration was being defended by an insurance company or its attorney, could possibly throw any light upon the question of whether the injury to appellee had been occasioned by actionable negligence of appellant.

"Why, then, should the jury be told that the defense was made by a casualty insurance company? If this can be done, why may not a jury be told that the action is prosecuted by a corporation created to hunt up and prosecute accident cases, or by an attorney for a contingent fee; and that one-half of any verdict rendered for the plaintiff will go to such corporation or to his attorney?

"It is urged that this statement was made for the purpose of selecting a disinterested jury.

"Jurors may be asked if they know certain persons or have business or other relations with them, but under the guise of obtaining a fair jury, information calculated to prejudice jurors against either party cannot be given, and the trial court should not only prevent this, but if satisfied that despite its rulings jurors have thus been swerved in the considerations, should set aside verdicts so obtained."

In *Citti v. Bava,* 204 Cal. 136, 266 Pac. 954, it was held: "The natural tendency of a line of examination that suggests to the jury that the defendant is indemnified against any judgment for damages against him is highly prejudicial to his rights, especially in a closely balanced case where the evidence otherwise would be easily sufficient on appeal to support a verdict either for the plaintiff or for the defendant. Such attempts on the part of counsel have frequently been held to be improper and prejudicial."

In *Blue Bar Taxicab & Transfer Co. v. Hudspeth,* 25 Ariz. 287, 216 Pac. 246, the court said: "The effect of these questions, together with the answer of the first question, made the fact known, and impressed upon the jury, that back of defendant's liability stood some sort of insurance. This information was not wholly inadvertent, so far as plaintiff was concerned, nor was it a necessary incident of any legitimate evidence. No instruction was given to the jury to cure the effect of it. The consequence of such information is well known, and is sufficient to require a new trial. It is useless for counsel to talk of the innocuous character of this evidence, when they at the same time, in order to get the information before the jury, are willing to imperil any verdict which might be rendered. All lawyers know the rule in regard to such evidence, and they must not expect the court to establish a rule, and then wink at its violation."

In *Horsford v. Carolina Glass Co.,* 92 S. Car. 236, 75 S. E. 533, the court said: "There can be no doubt on the bench or at the bar that in an action by an employee against his employer to recover damages for personal injury both reason and authority forbid bringing into the evidence or argument the fact that defendant is protected by employer's liability

insurance. Such evidence or argument has a manifest and strong tendency to carry the jury away from the real issue and to lead them to regard carelessly the legal rights of the defendant on the ground that some one else will have to pay the verdict. This is the only reason that can be assigned for attempting to use such testimony and argument. One of the most manifest and pressing duties not only of courts but of lawyers is to prevent influences of this kind from finding their way into the administration of justice. In the discharge of this duty the entire commonwealth is deeply concerned, for the use in evidence and argument of such influences produces injustice, and waste of time and labor of courts and juries at great public cost."

To quote from all the authorities from other jurisdictions on this question would be a work of supererogation. Cases from jurisdictions not hereinbefore cited, which support the rule announced in this opinion, are: *Jupollo Public Service Co. v. Grant* (C. C. A. 4th Circuit) 42 Fed. (2d) 18; *New Aetna Portland Cement Co. v. Hatt* (C. C. A. 6th Circuit) 231 Fed. 611; *Dempsey v. Goldstein Bros. Amusement Co.*, 231 Mass. 461, 121 N. E. 429; *Sawyer v. Arnold Shoe Co.*, 90 Me. 369, 38 Atl. 333; *Rodzborski v. American Sugar Refining Co.*, 210 N. Y. 262, 104 N. E. 616; *Coe v. Van Why*, 33 Colo. 315, 80 Pac. 894; *Steele-Smith Dry Goods Co. v. Blythe*, 208 Ala. 288, 94 So. 281; *Goss v. Williams*, 196 N. Car. 213, 145 S. E. 169; *Holloway v. Telfer*, 136 Kan. 80, 12 Pac. (2d) 826; *Herrin, Lambert & Co. v. Daly*, 80 Miss. 340, 31 So. 790; *Northwestern Fuel Co. v. Minneapolis Street R. Co.*, 134 Minn. 378, 159 N. W. 832; *Prewitt-Spurr Mfg. Co. v. Woodall*, 115 Tenn. 605, 90 S. W. 623; *Smith v. Yellow Cab Co.*, 173 Wis. 33, 180 N. W. 125; *Fakes & Co. v. Fort Worth Gas Co.*, 280 S. W. (Tex. Civ. App.) 234; *Walters v. Appalachian Power Co.*, 75 W. Va. 676, 84 S. E. 617; *Ronan v. Turnbull Co.*, 99 Vt. 280, 131 Atl. 788; *Curran v. Lorch*, 243 Pa. St. 247, 90 Atl. 62; *Deffenbaugh v. Inter-State Motor Freight Corporation*, 254 Mich. 180, 235 N. W. 896; *Wilson v. Wesler*, 27 Ohio App. 386, 160 N. E. 863; *Terry Dairy Co. v. Parker*, 144 Ark. 401, 223 S. W. 6;

*Walker v. New Haven Hotel Co.*, 95 Conn. 231, 111 Atl. 59; *Miller v. Harrison Construction Co.*, 298 S. W. (Mo. App.) 259; *Mithen v. Jeffery*, 259 Ill. 372, 102 N. E. 778; *Stoskoff v. Wicklund*, 49 N. Dak. 708, 193 N. W. 312; *Taggart v. Keebler*, 198 Ind. 633, 154 N. E. 485; *Danville Light, Power & Traction Co. v. Baldwin*, 178 Ky. 184, 198 S. W. 713; *Chielinsky v. Hoopes & Townsend Co.*, 1 Marv. (Del.) 273, 40 Atl. 1127; *Wilson v. Blair*, 65 Mont. 155, 211 Pac. 289; *Ryan v. Trenkle*, 199 Ia. 636, 200 N. W. 318; *Frank v. Corcoran*, 25 Ohio App. 356, 158 N. E. 501; *Wilson v. St. Joe Boom Co.*, 34 Idaho, 253, 200 Pac. 884; *Aderhold v. Bishop*, 94 Okla. 203, 221 Pac. 752; *Birch v. Abercrombie*, 74 Wash. 486, 133 Pac. 1020; *Hall v. Trimble*, 104 Md. 317, 64 Atl. 1026; *Bennett v. City of Portland*, 124 Or. 691, 265 Pac. 433; *Gerry v. Neugebauer*, 83 N. H. 23, 136 Atl. 751; *St. Jean v. Lippitt Woolen Co.*, 69 Atl. (R. I.) 604.

Against this array of authority, we have failed to find a single case supporting the rule announced by our court in *Miller v. Central Taxi Co., supra,* and *Jessup v. Davis, supra.* The authorities are unanimous in supporting a contrary view. In addition to the great weight of authority being against the rule heretofore existent in Nebraska, we feel that reason and logic also support the majority view.

It is therefore ordered that the rule of practice promulgated in *Jessup v. Davis, supra,* and heretofore followed by this court, is revoked, such revocation to be effective in all cases tried after 20 days from the date of the release of this opinion, and that on and after said date, this rule and the holdings of this court based thereon shall cease to be authoritative.

For the reasons herein stated, the judgment of the trial court is reversed, and the cause is remanded.

REVERSED.

EBERLY, J., dissenting.

I respectfully dissent from the judgment of reversal in this case. The sole reason for this court's action is fairly disclosed by the following extract from the majority opin-

ion: "We agree with plaintiff's counsel that evidence that defendant carried liability insurance is admissible to prove the relation of master and servant, or any other relation upon which liability can be predicated, where, as in the case at bar, it is an issue under the pleadings. * * * But, in the case at bar, the form in which the question was asked precludes this argument because it shows on its face that it did not tend to prove any such issue. The question asked made no reference to the cab in which plaintiff was riding at the time of the accident and was clearly offered for the purpose of informing the jury that an insurance company, and not the defendants, would pay any judgment they might render."

This also appears as the sole reason for reversal, as stated in the first paragraph of the syllabus.

It may be said in passing that the motion of appellants for a new trial, filed in the trial court, contains as an assignment of error no charge of misconduct of plaintiff's attorney during the trial. But, without reference to questions, upon which the case is by the majority opinion made to turn, having been properly raised in the trial court, we are impressed by the view that the opinion proceeds on an assumption of facts which the record does not support; that it ignores the scope and effect of the real issue presented by the record; and expresses a conclusion which, in view of the actual issue to which it is by the majority opinion applied, is wholly without support of the opinions which are relied upon to sustain it.

The transaction in suit is one which the police power of this state has expressly regulated, and the incidents which compose it must be viewed in the light of the duties our statutes enjoin. These are expressed in chapter 147, Laws 1929. They were enacted by the legislature of that year, approved April 6, 1929, and in force and effect on September 1, 1933, the date of the accident which forms the subject of the present action.

The act is entitled: "An act relating to taxicabs and public cars and providing for the filing of insurance policies,

surety bonds or securities with the state railway commission for the protection of the public; and to provide penalties for the violation thereof."

This act contains four sections.

Section 1 defines the terms "taxicab" and "public car."

Section 2 provides: "No person, firm, association or corporation shall operate or use any taxicab in any manner as above defined in the state of Nebraska until there has been filed or deposited with the Nebraska state railway commission either a liability insurance policy or a surety bond with an approved surety company as surety or negotiable and salable securities at the option of such person, firm, association, or corporation but which shall be approved by the commission, in such sum and with such other terms and provisions and on such conditions as the commission may deem necessary adequately to protect the interest of the public having due regard for the number of persons and amount of property affected."

Section 3 relates to the application of the terms of the act to public cars, and section 4 constitutes the provisions for penalties for a violation thereof.

It will be noted that by the terms of this act certain regulatory powers are expressly vested in the Nebraska state railway commission. This is an agency of the state, constitutionally created, and endowed with certain powers in their nature both executive and legislative. It is therefore within the reason of the rule which declares that the public official acts and proceedings of the legislative and executive departments of the state and national governments may be noticed judicially. 7 Ency. of Evidence, 983.

So, also, "Where a statute authorizes executive officers to make general rules for the conduct of public business, and such rules are duly made and published, the courts will take judicial notice of them." 7 Ency. of Evidence, 990.

In *Larson v. First Nat. Bank of Pender,* 66 Neb. 595, 72 N. W. 729, this court was committed to the view: "Where a statute authorizes executive officers to make general rules for the conduct of public business, and such rules are duly

made and published, the courts will take judicial notice of them."

It, therefore, follows that, in a proper case, it is the duty of this court to judicially notice that prior to the 1st day of September, 1933, after due notice to all persons interested, an open public hearing by the Nebraska state railway commission was had and held, and regulations, provisions, and conditions contemplated by section 2, ch. 147, Laws 1929, were by it then duly made, adopted, prescribed, approved, and published as necessary to adequately protect the interest of the public, having due regard for the number of persons and amount of property affected, and have ever since such adoption remained and continued in force and effect. That, by the directions and requirements of the state railway commission, the following, so adopted and approved, constitute a part of all liability insurance policies filed under the provisions of said act:

"1. In consideration of the premium stated in the policy and determined in accordance with the provisions of the policy and/or indorsements attached thereto, *the company hereby waives a description of the automobiles to be insured thereunder, and agrees to pay,* subject to the limits of liability set forth in the policy, *any final judgment for personal injury, including death resulting therefrom, sustained by any person other than an employee of the assured* (while engaged in the maintenance or operation of the assured's automobile) *caused by any and all passenger carrying automobiles operated by the assured.* The named assured states by acceptance of this indorsement that the list of passenger carrying vehicles contained in said policy is a complete list of all passenger carrying vehicles owned by him at the inception of said policy, and the assured agrees to immediately notify the company and the Nebraska state railway commission of any additional passenger carrying vehicles placed in service."

Further, "9. It is understood and agreed that this policy is accepted and approved by the Nebraska state railway commission under the express promise and condition on the

part of the company, that nothing in the policy to which this indorsement is attached or in any indorsement already attached or which may hereafter be attached, which is inconsistent with the terms of this indorsement, shall in any manner affect the validity of this indorsement."

These provisions, if valid, have the full force and effect of law, and, in view of their contractual nature, could hardly be questioned in this proceeding.

Issues in legal controversies are made up of two essential elements, viz., the facts, and the law applicable to the same.

In the first paragraph of plaintiff's petition, in addition to formal matters, it is alleged: "The defendant, Publix Cars, Inc., is a corporation organized under and existing by virtue of the laws of the state of Nebraska for the purpose of conducting, operating and maintaining taxicabs for hire as common carriers in the aforesaid city of Omaha, Douglas county, Nebraska; that defendants, Elmer Denson and B. J. Reynolds, are citizens of the state of Nebraska, residing in the said city of Omaha, county and state aforesaid."

The second paragraph of plaintiff's petition contains the following: "That on or about the first day of September, 1933, at about the hour of 9:15 o'clock p. m., plaintiff approached a taxicab stand operated by the defendant, Publix Cars, Inc., at Twenty-fourth and Cuming streets in said city of Omaha, intending to become a passenger for hire of said defendant, and requested that he be taken to his home at 1002 No. Forty-ninth street in said city of Omaha; that he was told to enter a cab operated by and bearing the name of the defendant, Publix Cars, Inc.; that the defendant, Elmer Denson, was the driver of said cab, and at said time the said defendant, B. J. Reynolds, was the owner of said cab, and that the same was being used and operated by the defendant, Elmer Denson, in the taxicab business of the defendants, Publix Cars, Inc., and B. J. Reynolds, and that the said Elmer Denson was legally using and operating the same under their direction and with their permission."

Plaintiff's petition then sets out the details as to the happening of the accident, the specific acts of negligence on

part of defendants, the injuries sustained by plaintiff, and closes with a prayer for the amount of damages alleged to have been suffered.

The answer of defendants admits the allegations of paragraph 1 of plaintiff's petition. In paragraph 2 of the answer, defendants admit that "on or about the date mentioned in plaintiff's petition, while riding in a taxicab, plaintiff sustained some slight injuries, the exact nature of which is not known to defendants, but which defendants allege are not of the character nor as serious as set forth in plaintiff's petition." Paragraph 3 of the answer reads as follows: "Further answering defendants deny all and singular the allegations of plaintiff's petition not herein admitted." Paragraph 4 of the answer sets out the alleged contributory negligence of the plaintiff and prays that plaintiff's petition be dismissed at plaintiff's costs.

It is manifest that the relationship of the Publix Cars, Inc., and its legal responsibility for the cab driver operating the cab at the time of the accident in which plaintiff was injured is squarely put in issue by these pleadings. The case was tried on the theory that new matter alleged in the answer was denied.

At the close of the trial, the motion of counsel for the Publix Cars, Inc., for a directed verdict was as follows: "Now, at the close of all of the evidence, the defendant, the Publix Cars, Inc., moves the court to direct the jury to return a verdict in favor of the said defendant, or to dismiss the jury and enter judgment in favor of the defendant, for the following reasons, and each of them, to wit: 1. That the evidence was insufficient to sustain a verdict in the plaintiff's favor and against the defendant. 2. The evidence wholly fails to establish a relationship of master and servant between the said defendant and the defendant, Denson, the driver of the cab. 3. The evidence wholly fails to show that the defendant had any control or direction over the movements and operation of the taxicab involved in this accident."

At the same time, in open court, the Commercial Stand-

ard Insurance Company, without objection on part of defendants, and by and through defendants' attorney, intervened and presented the following motion: "Now, at the close of all of the evidence, the defendant, Commercial Standard Insurance Company, moves the court to direct the jury to return a verdict in favor of the said defendant, or to dismiss the jury and enter judgment in favor of the defendant, Commercial Standard Insurance Company, for the following reason, to wit: 1. That the evidence was insufficient to sustain a verdict in the plaintiff's favor and against the defendant, Commercial Standard Insurance Company."

Both of these motions were overruled. The insurance company filed no motion for a new trial. But that it became in fact a party to the proceeding is recognized by the trial court in the bill of exceptions settled.

In view of the admissions of the answer, it is plain that we have in this case a transaction squarely within the provisions of chapter 147, Laws 1929, and the terms employed in the pleadings are presumptively used in the sense defined by that act.

Under the issues made by the pleadings, it is plain that the actual relation of the Publix Cars, Inc., to the offending vehicle is vital. The real question presented is: Was the taxicab in which the plaintiff received his injuries then employed in the business for which the Publix Cars, Inc., was admittedly organized to transact, and which it was alleged that corporation was then carrying on in conjunction with other defendants? While the rights alleged to have been possessed by the Publix Cars, Inc., are, in places in the record, referred to as "ownership," ownership is recognized by the authorities as an elastic term. Thus, it is said: "The word 'owner,' when used in connection with personal property, does not mean necessarily the absolute legal owner only, but it may also apply to any person having the possession and control of the property. It may include one having the general property, or a special property, or even one in possession by virtue of a lien." 28 Am. & Eng. Ency. of Law (2d ed.) 237. So, also, it includes one who

has power of disposition, care, control and management of a chattel; also, any one who has an interest under a special title. 50 C. J. 776.

In view of the policy of the controlling statute, in the instant case it would include any one who, by virtue of contract or agreement, possessed rights in and to the taxicab in its employment in the business of the Publix Cars, Inc. The relation of the offending taxicab to the defendant corporation was challenged and expressly made an issue. The source of proof was confined to the defendants. Under these circumstances plaintiff was relegated to circumstantial evidence. The unquestioned rule on the subject is: "Circumstances that are the ordinary *indicia* of ownership, or that tend to indicate ownership, are admissible as evidence thereof." 9 Ency. of Evidence, 263. In support of this text, the following are among the cases cited: "The payment of taxes, procuring a policy of insurance, describing the premises and naming the person to be insured, the act of giving a promissory note to secure against losses, and the payment of assessments to meet losses, are all proper tests of ownership, not conclusive, but competent to be submitted and weighed by the jury." *Hodgdon v. Shannon,* 44 N. H. 572. "Insuring of property in one's name is admissible in evidence to show that the insured managed and controlled it as her own." *Bettes v. Magoon,* 85 Mo. 580. "The fact that a man applied for a license to keep a dog is competent evidence that he was the owner or keeper of the dog." *Commonwealth v. Gorman,* 16 Gray (Mass.) 601. The principles upon which these decisions are based have been expressly approved in this jurisdiction. *Fruide v. State,* 66 Neb. 244, 92 N. W. 320; *Schiek v. Sanders,* 53 Neb. 664, 74 N. W. 39.

It is also undoubtedly true that, even in the jurisdictions which are cited in the majority opinion, with exceedingly few exceptions, the rule is generally applied that, though evidence may tend to establish that the defendant carried liability insurance, it will not be rendered incompetent or inadmissible on that account where it tends to establish the

necessary facts that the defendant is the owner or controller of the instrumentality involved; for instance, a truck; or participated in the business in which the offending instrumentality was engaged when the litigable injuries were inflicted. See, *Gayheart v. Smith,* 240 Ky. 596, 42 S. W. (2d) 877; *Hoover v. Turner,* 42 Ohio. App. 528, 182 N. E. 598; *O'Connor v. Sioux Falls Motor Co.,* 57 S. Dak. 397, 232 N. W. 904; *Biggins v. Wagner,* 60 S. Dak. 581, 245 N. W. 385; *Perkins v. Rice,* 187 Mass. 28, 72 N. E. 323.

In summarizing the evidence, it will be remembered that the allegations contained in the first paragraph of plaintiff's petition, as hereinbefore quoted, were expressly admitted. The facts alleged in the second paragraph of plaintiff's petition, though formally denied by pleading, were fully established by plaintiff's proof; and their existence is not even seriously challenged by defendants' evidence. The proof also establishes that the defendant Publix Cars, Inc., is engaged in the taxicab business; that there is a fleet of cars on the streets of Omaha, each of which is owned by an individual other than the Publix Cars, Inc.; that each of these cars bears the name of the Publix Cars, and is operated as a Publix Car taxicab by the owner thereof, and such owner pays the Publix Cars, Inc., a certain amount for the right to operate such car as a Publix Car, and without payment of this "stated" fee no car could be operated by its owner as a Publix Car taxicab. It also appears that the Publix Cars, Inc., carried advertising for the Publix Cars, which was of course for the equal benefit of all cars in service. Further, telephone service for all cars of the fleet is also furnished by the Publix Cars, Inc., and the testimony is explicit that each individual cab owner of the fleet pays his contribution for the service the company renders him each day in the way of taxicab passengers or the business he may get. It also appears that the taxicab responsible for the accident in suit was, at that time, owned by Reynolds, but was a member of the Publix Cars, Inc., taxicab fleet in Omaha, and was being operated as a part thereof, making the same contributions and receiving the same

benefits as were received by the owners of other cars in the fleet. There is no evidence that the Publix Cars, Inc., was the absolute owner of any car bearing its name or which was under its direction and control. Under these facts, in view of the issues presented for determination, practically all authorities agree that evidence that the defendant carried insurance, liability or other kind, on the instrumentality involved, is properly receivable to establish, in connection with other facts established by proof, that such defendant is the owner or responsible controller of the property so insured.

The question addressed to the president of the Publix Cars, Inc., which the majority opinion quotes and condemns, is certainly one which seeks to develop from an unwilling witness the existence, at the time of the infliction of the injuries in suit, of an automobile insurance policy covering results of accidents "to persons driving and riding in your cabs for fare." Obviously, it must be admitted that by "your cabs" all cabs in the fleet then operated by the company of this witness were included. The affirmative answer, which necessarily affirmed the fact that this company maintained insurance on the entire fleet, was, in view of other proof in the record, incontrovertible evidence which disclosed that the company carried insurance on defendant's cab in suit. The form of the policy referred to is not suggested in the majority opinion, nor, in fact, is it disclosed by the evidence. If we suppose it to be a "blanket" policy covering all cars of the fleet, and that the car in suit was only insured as a member of this fleet, what possible valid reason supports the rule announced in this opinion? If such there be, we respectfully suggest the great importance of advising the profession how the important fact of insurance on a single car may be properly elicited under such conditions, without committing the unforgivable error of disclosing that other cars of the defendant, in no wise connected with the accident or with the lawsuit arising therefrom, were also insured. Is a "blanket" insurance policy an unsurmountable legal barrier to ascertaining, in a proper

case, that a single car embraced therein is thereby insured?

But we gather from the majority opinion (including the authorities cited in support thereof) that it is wholly premised on the assumption that they are dealing with liability insurance, in the form repeatedly before this court, wherein the private owner of an automobile is indemnified and protected by private contract against the result of his own wrongs. That is not our present case. Here, we are dealing with a public agency in its exercise and discharge of public duties, as to which the public policy of the state exacts prescribed compliance. This includes the nature and forms of insurance it is required to have and maintain. The ordinary presumption, in the absence of clear and direct evidence to the contrary, supports the conclusion that the insurance which the Publix Cars, Inc., had and possessed at the time of the accident was such as is required by chapter 147, Laws 1929, and regulations pursuant thereto, as a condition precedent to the commencement of the business it was organized to carry on and to its continuance therein.

On this basis, in the instant case we are not concerned with questions arising out of a private contract for indemnity protecting a tort-feasor from the results of a private wrong by him inflicted. Here, we have for consideration, in effect, a police regulation established primarily for the protection of the public. In legal effect, it provides protection to the public (and those who compose it) for injuries suffered by imposing a positive duty on one engaged in carrying and transporting passengers in taxicabs for hire to comply with the terms of the controlling statute and regulations pursuant thereto by providing and maintaining in force contracts of insurance wherein the positive obligation is imposed on and accepted by the insurer (as to such injuries within the limits of his liability set forth in such policy or contract), to promptly pay and discharge "any final judgment for personal injury, including death resulting therefrom, sustained by any person * * * caused by any and all passenger carrying automobiles operated by the assured."

As to the identity of the offending car, these rules and conditions thus prescribed by the commission, in effect, provide that the insurer shall waive a description of the automobiles to be insured by his contract, and, in addition thereto, shall agree to pay any final judgment for all deaths and personal injuries caused by any and all passenger carrying automobiles operated by the assured.

It will be noted that under the above provisions recovery for damages suffered is in no manner predicated on the identity of the offending car, but is established by proof of the existence of public insurance protecting the carrier and proof of damages inflicted by any or all of the passenger carrying automobiles operated by the assured. In connection with other facts in the record the inference is unavoidable that Publix Cars, Inc., in its taxicab business, at the time of the accident in suit, carried insurance on all of its taxicabs, which constituted its fleet, and of which the offending taxicab was a member, and that the plaintiff was injured by a taxicab operated by said Publix Cars, Inc.

I submit that, by these facts, the existence of insurance secured and maintained by this taxicab company was properly established, and its relation to the instrumentalities covered by this insurance properly shown.

It follows that the rule of exclusion of evidence announced in the majority opinion, as applied to the actual facts in the present case, is wholly unjustified, and is not sustained by logic, reason, nor any of the authorities cited in the opinion.

I am not in accord with the action of this court in revoking the rule as to cross-examination promulgated in *Jessup v. Davis,* 115 Neb. 1, 211 N. W. 190. The reasons which were thought controlling at the time of its adoption appear in that opinion.

It will be noted in passing that cases approved and cited in the majority opinion, in support thereof, are not wholly in harmony with each other. Indeed, for example, *Gerry v. Neugebauer,* 83 N. H. 23, 136 Atl. 751, is as repugnant to the doctrine announced by the writer of the majority opinion in the instant case as it is to the rule revoked.

During the past year within this nation, as the result of accidents from various causes, there have occurred 99,000 fatalities, 365,000 cases of permanent disability, and 9,-100,000 cases of temporary disability. Of these, Nebraska has had her due proportionate share. It is commonly admitted that in many instances actions for legal redress by these unfortunates have furnished the occasion for manifest abuse of legal process and improper practice of law in connection therewith.

The evidence adduced at an investigation ordered by the appellate division of the supreme court of New York on February 7, 1928, certainly sustains the conclusion stated, and an article appearing in the bound volume of the American Law Review for 1927, at page 77, entitled, "Why Do Courts Coddle Automobile Indemnity Companies," suggests the necessity of the rule as heretofore announced by this court, to prevent evils which the action now taken by the majority opinion will necessarily conceal. This action creates a regrettable uncertainty in this class of actions in this state in procedure. The rule is revoked, and nothing replaces it. Where are trial courts to find authoritative directions for procedure?

The facts in the instant case in no manner involved the application of the rule of cross-examination. The language of the opinion on this subject was selected with the express intention of announcing no rule of court on the subject. Improper cross-examination not being in any manner involved in the record here before us, the language of the opinion relating thereto may not be considered as other than *obiter dicta,* and without binding force and effect. It is obvious that the situation created by the action of this court will continue as an appeal to court or legislature for relief from uncertainty in procedure, to the end that the rights of unfortunate victims of accidents in this state may be properly safeguarded and not imperiled by dangers wholly unconnected with the merits of their claims.

DAY, J., dissenting.

Unable to concur in the majority opinion, my reasons are

respectfully submitted. (1) The rule of practice previously promulgated by this court in *Jessup v. Davis*, 115 Neb. 1, 211 N. W. 190, is not involved here. (2) Even if it were, a judgment is not to be reversed where a trial court follows a rule of practice promulgated by this court under its constitutional powers. The majority opinion takes cognizance of the rule by revoking the rule as of a future date. (3) The evidence as to public liability insurance was admissible here, irrespective of the rule, to show the relation between the various defendants.